No. 85-290

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

ANNA MARIE PHELAN,

     Claimant and Appellant,

  -vs-

LEE BLAINE ENTERPRISES, Employer,

    and

ST. PAUL MERCURY INSURANCE COMPANY,

     Defendant and Respondent.

---

APPEAL FROM:  The Workers' Compensation Court, the Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Keefer, Roybal, Hanson, Stacey & Jarussi; Gene R.
        Jarussi, Billings, Montana

    For Respondent:

        Lucas & Monaghan; Thomas Monaghan, Miles City,
        Montana

---

Submitted on Briefs: Oct. 31, 1985

Decided:  February 27, 1986

Filed:  FEB 27 1986

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The claimant, Anna Phelan, a twenty-four year old female, filed a Petition for Hearing before the Workers' Compensation Court asking the court to set aside a final settlement entered into August 1981 on the grounds that the parties to the settlement were suffering from a mutual mistake of fact. The court barred claimant's petition as res judicata and this appeal followed.

We reverse the judgement of the Workers' Compensation Court barring claimant's petition, and remand this matter to the court with directions to hear the petition on its merits.

The present action arises out of a case which was previously before the Workers' Compensation Court. The prior case was entitled Phelan v. Big Bear Stores, Inc. et. al. It was assigned docket number 1432 and court file number 1281-102. The decision of the Workers' Compensation Court was issued on March 21, 1984. For brevities sake this prior case will hereinafter be referred to as "Phelan I."

In Phelan I, the Workers' Compensation Court was faced with a complex factual situation and some novel questions of law.

On October 30, 1980, claimant suffered a back injury while employed by Lee Blaine Enterprises who was insured by St. Paul Mercury Insurance Company ("St. Paul"). The claimant underwent back surgery, and by July 7, 1981, was judged by her treating physician to have reached a stationary state. The physician rendered an impairment rating of 25%, and in August 1981, claimant entered into a final settlement of her claim. She received 125 weeks of permanent partial disability benefits, less some overpayments, for a total net

settlement of $9,556.43. It is this final settlement which is the subject of the current appeal.

In June 1981 (prior to the final settlement mentioned above), the claimant was employed by a second employer who was insured by Glacier General Insurance Company. While employed by the second employer, the claimant experience a sexual incident which she considered to be a sexual assault. She did not work from the date of the incident (June 29, 1981) until September 1, 1981.

In September 1981, the claimant was employed by a third employer which was insured by the State Compensation Insurance Fund. While employed by this third employer, the claimant suffered an industrial accident.

In general, the court in Phelan I was asked to determine the following issues: First, was the amount received by the claimant in her final settlement arising out of the October 30, 1980, injury sufficient in light of her disability? Second, was the sexual incident which occurred in June of 1981 a compensable injury under the Workers' Compensation Act? Third, what was the nature and extent of claimant's current disability, if any, and her entitlement to benefits, if any?

On March 21, 1984, the Workers' Compensation Court entered its judgment. Succinctly stated, the court's judgment was that the sexual incident did constitute a compensable injury, and that the claimant was currently (as of the date of the judgment) entitled to temporary total disability benefits by reason of the injury which occurred in September 1981 while employed by the third employer. In addition, these temporary total disability benefits were ordered to continue until the disability ceased as a result of that injury. The court also found that claimant may be

3

entitled to additional benefits at "some later date." No party to that first case requested a rehearing or appealed the court's judgment.

It is important to note for the purposes of the current appeal that the court's judgment in Phelan I dealt only with the claimant's current disability status and her current entitlement to disability benefits. The record indicates there was no ruling on the issue of whether the final settlement (entered into in 1981) arising out of her October 30, 1980, injury was sufficient in light of the claimant's disability as of the date of the settlement.

On October 8, 1984, claimant filed a Petition for Hearing seeking to set aside the final settlement entered into in August 1981 between herself and St. Paul. The claimant asked to have the settlement set aside on the grounds that the parties to the settlement were suffering from a mutual mistake of fact at the time the settlement was entered into. The relief requested by the claimant was denied by the court on the grounds of res judicata. Specifically, the court ruled that claimant had raised basically the same issue in Phelan I (the first issue mentioned above) as she had raised in her current petition. The court found that although the language of these two issues were not identical, both framed the same issue: whether the claimant is entitled to reopen her final settlement agreement of August 1981. The court found it had already ruled on this issue and consequently barred her current petition as res judicata.

The claimant raises the following issue for review by this Court:

(1) Did the Workers' Compensation Court err in applying the doctrine of res judicata to deny claimant's

4

request that her final settlement of August 1981 be set aside?

The doctrine of res judicata is designed to prevent "relitigation of that which has been finally adjudicated." S-W Company v. John Wight, Inc. (1978), 179 Mont. 392, 404-5, 587 P.2d 348, 355. The criteria used to determine whether an issue is barred by res judicata were set forth by this Court in Smith v. County of Musselshell (1970), 155 Mont. 376, 378, 472 P.2d 878, 880, as follows:

> These criteria are: (1) the parties or their privies must be the same; (2) the subject-matter of the action must be the same; (3) the issues must be the same, and must relate to the same subject-matter; and (4) the capacities of the persons must be the same in reference to the subject-matter and to the issues between them.

Of the four criteria set out in Smith, the parties agree the important one in the present case is criteria (3) which is the identity of the issues. The rule regarding the identity of the issues is simple. If the issues in the second case were not raised and determined in the first case, then the judgment of the first case does not bar the second action. Specifically, this Court has held:

> [U]nless it clearly appears that the precise question involved in the second case was raised and determined in the former, the judgment is no bar to the second action.

Brannon v. Lewis and Clark County (1963), 143 Mont. 200, 207, 387 P.2d 706, 710-711.

Applying the above standards to the instant case, we hold the Workers' Compensation Court erred in denying claimant's petition to set aside the final settlement on the grounds of res judicata.

First, the issues in Phelan I and the present case are not the same. In Phelan I the issue before the Workers'

5

Compensation Court which was similar to the main issue in the present case was issue number 3:

> 3. Whether claimant's final settlement arising out of her injury on October 30, 1980, is sufficient, and, if not, the total amount of compensation to be awarded to her as a result of the disability that she suffered from her industrial accident of October 30, 1980.

The record indicates issue number 3 in Phelan I was based on a case decided by this Court in November 1981, three months after the parties entered into the final settlement which is the center of the present dispute.

In November 1981, this Court decided Holton v. F.H. Stoltze Land and Lumber Company (1981), 195 Mont. 263, 637 P.2d 10. In Holton this Court ruled that a carrier had a duty to pay without delay undisputed benefits. This undisputed amount was to be paid without requiring a claimant to enter into a settlement. Holton, 637 P.2d at 13, 14.

In light of Holton, the record indicates claimant presented issue number 3 (quoted above) to the Workers' Compensation Court in Phelan I. It was claimant's position in Phelan I that the settlement should be reopened because claimant had settled her case (and thus given up a valuable right) in exchange for an amount equal to the undisputed liability. Under Holten, the claimant argued, that amount should have been paid without requiring any settlement. Specifically, it was claimant's contention in Phelan I (as set out in the pre-trial order) that:

> The settlement with St. Paul Mercury Insurance Co. on September 17, 1981, was on a Final basis (i.e., could be reopened within four years) and was based on an impairment rating of 25% given by Dr. Maurice Smith. However, the Montana Supreme Court in Holton v. F. H. Stoltze Land & Lumber Co., 38 St. Rptr., 1835, 637 P2d 10 (1981) held that an

6

> injured worker is entitled to be paid the
> impairment rating absolutely and in all
> events, with no strings attached. Thus,
> claimant is entitled to be paid 125 weeks
> (500 x 25%) at her permanent partial rate
> of $85.00, or $10,625.00 absolutely and
> in all events without being required to
> give up a valuable legal right, i.e., to
> keep her case open indefinitely. This
> fact, plus the fact that her legal
> disability as defined by 39-71-121 MCA is
> greater than her impairment rating,
> mandates that the Final settlement with
> St. Paul be reopened.

We hold the question in Phelan I, with regard to issue

number 3, was basically one of amount. That is, was the

settlement in sufficient amount to compensate the claimant

adequately for her disability given the holding of Holton?

The issue in claimant's present petition before the

Workers' Compensation Court was as follows:

> 1. Whether at the time of settlement the
> parties were suffering from a mutual
> mistake of fact which now requires that
> the settlement be set aside.

That is, were the parties suffering from a mutual mistake of

fact at the time of settlement which requires that settlement

be set aside?

Claimant asserts the mistake of fact under which the

parties were laboring in August 1981 was the fact (unknown to

either St. Paul or claimant) that claimant was actually

totally disabled by reason of the June 1981 sexual assault.

Claimant argues since she was totally disabled by reason of

the second industrial accident, it was not possible for her

or St. Paul to consider and evaluate her permanent disability

which resulted from her first injury in October 1980.

Claimant argues the doctor's rating could not be

intelligently evaluated by herself or St. Paul because she

was totally disabled by reason of a second, separate injury.

Therefore, claimant argues, their mutual mistake as to the

status of her disability when the settlement was entered into

7

is the mistake which requires the settlement to now be set aside.

In light of the discussion above, we hold the issues in Phelan I and the present case are not the same. In Phelan I, the question was basically one of amount. In the present case, the question goes straight to the validity of the settlement agreement itself. The issues are different --for this reason alone res judicata does not apply.

The second reason we hold the Workers' Compensation Court erred in denying claimant's petition on the grounds of res judicata is because issue number 3 in Phelan I was not decided. In its decision in Phelan I, the Workers' Compensation Court did not rule on claimant's contention that she was entitled to reopen her final settlement under the Holton case. This issue went unanswered.

The Workers' Compensation Court in Phelan I did say that claimant was currently (as of the date of the judgment) totally disabled and entitled to temporary total disability benefits. The court also assigned responsibility for the claimant's current disability. The court found that claimant's disability stemmed from her third industrial accident which occurred September 1981. Thus, St. Paul (the insurer at the time of the first industrial accident) was not responsible for the claimant's temporary total disability benefits. Likewise, Glacier General (the insurer at the time of the sexual assault) was not responsible for the claimant's current temporary total disability benefits. Specifically, as to St. Paul, the court found in Phelan I as follows:

> 3. Lee Blaine Enterprises (Employer) and St. Paul Mercury Insurance Company (defendant) are not liable to the claimant for further compensation or payments.

8

> The claimant's October 30, 1980, injury and subsequent laminectomy resulted in a physical impairment that had reached a stationary state by July 7, 1981. Dr. Smith concluded that she had reached maximum medical healing as of that date, and rated her impairment at 25 percent. Finding of Fact No. 8. There is evidence that the stress of this injury also contributed to her generalized anxiety disorder. Finding of Fact No. 12. This disorder was diagnosed on June 19, 1981, but had stabilized by August of the same year. Id.
>
> Montana is "committed to the doctrine that the particular injury must be the proximate cause of the present condition for which the claimant seeks compensation." Newman v. Kamp, 140 Mont. 487, 495, 374 P.2d 100, 104 (1962); Little v. Structural Systems, ____ Mont. ____, 614 P.2d 516, 37 St. Rptr. 1187, 1191 (1980). Here it is determined that the claimant's current disability is based on her fear of associating with men and her back condition, caused by the Sign Talker sexual incident and the Big Bear accident, respectively. Findings of Fact Nos. 8, 9, 13, 14.
>
> Since the claimant's back had reached maximum medical healing prior to her second physical injury at Big Bear, Lee Blaine Enterprises and St. Paul Mercury Insurance Company cannot be held liable for her current physical disability.
> . . .

The finding in Phelan I that St. Paul was not liable for claimant's current physical disability did not answer the question of whether claimant had received sufficient compensation in her 1981 final settlement. In other words, the record indicates no ruling was made by the court in Phelan I on issue number 3 which raised the question of whether Holton, supra, mandated a reopening of the final settlement. Therefore, even if the issue in Phelan I was identical to the issue in the present case (which it is not), res judicata would not bar the present case because the issue was not decided in Phelan I.

9

Finally, it should be noted that the present issue of whether the parties were suffering from a mutual mistake of fact with regard to the final settlement could not have been raised in Phelan I. In its brief, St. Paul argues that the doctrine of res judicata bars the claimant's petition because the current petition raises an issue which should have been raised and decided in Phelan I. In other words, St. Paul argues that claimant's current petition is barred because it raises a matter which could have been litigated in Phelan I.

There is authority holding that the doctrine of res judicata applies not only to "issues which were raised and decided, but to issues which should have been raised and decided." Hadford v. Hadford (Mont. 1981), 633 P.2d 1181, 1185, 38 St.Rep. 1308, 1313. However, this rule is not applicable in the present case.

As noted earlier in this opinion, the Workers' Compensation Court in Phelan I found that at the time the parties entered into the final settlement for claimant's first industrial accident, claimant was actually totally disabled by reason of a second, separate compensable injury. Only after the court decision from Phelan I did the parties know that the sexual assault was a second industrial accident and that claimant was totally disabled by reason of this second accident at the time she settled her claim with St. Paul. In other words, claimant's present petition is based upon facts determined by the Workers' Compensation Court in its Phelan I decision. Therefore, it would have been virtually impossible for claimant to have raised the issue of mutual mistake of fact with regard to the final settlement in Phelan I.

10

The judgment of the Workers' Compensation Court barring claimant's petition is reversed, and we remand this matter to the court with directions to hear the petition on its merits.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11