No. 02-017

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 130

WILLIAM H. LANE, JR.,

        Petitioner,

    v.

MONTANA FOURTH JUDICIAL DISTRICT COURT,
THE HONORABLE JOHN W. LARSON, Presiding,

        Respondent.

ORIGINAL PROCEEDING:      Writ of Supervisory Control
In and for the County of Missoula, Cause No. DV 01-410,
The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

      For Petitioner:

           Randy J. Cox (argued), Boone, Karlberg, P.C., Missoula, Montana

           James Goetz (argued), Goetz, Gallik, Baldwin & Dolan, Bozeman, Montana

      For Respondent:

           Susan G. Ridgeway (argued), Attorney at Law, Missoula, Montana

           Milton Datsopoulos, Datsopoulos, MacDonald & Lind, Missoula, Montana

      For Amicus Montana Trial Lawyers Association:

           Larry Howell, University of Montana, Missoula, Montana

Orally Argued and Submitted:  May 23, 2002
Decided: April 29, 2003

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1      The Petitioner, William H. Lane, Jr., has petitioned this Court pursuant to Rule 17, M.R.App.P., for supervisory control over the District Court for the Fourth Judicial District in Missoula County, and the Honorable John W. Larson, presiding.  In support of his Petition, Lane contends that the District Court has erred by denying his motion for summary judgment based on principles of res judicata in an action brought against him by Kimble Properties, Inc., in Missoula County District Court Cause Number DV-01-410.  We accept supervisory control and affirm the Order of the District Court.

¶2      There are two issues presented for this Court's consideration:

¶3      1.  Is this an appropriate case for the exercise of supervisory control?

¶4      2.  Did the District Court err when it concluded that the Plaintiff's claim is not barred by principles of res judicata?

### FACTUAL BACKGROUND

¶5      The Plaintiff, Kimble Properties, Inc., brought this action in the District Court to enforce a judgment recovered against H-D Irrigating Company, Inc., in the District Court for the Sixth Judicial District in Sweet Grass County, Cause Number DV 92-26.  In this action, it sought to pierce the corporate veil by alleging that H-D Irrigating was the mere agent or alter ego of William Lane, Jr., its president and sole shareholder.  To understand the issue in this case, it is necessary to briefly summarize the facts which form the basis for Kimble's judgment against H-D Irrigating.  The following facts are taken from this Court's decision in *H-D Irrigating v. Kimble Properties*, 2000 MT 212, 301 Mont. 34, 8 P.3d 95, in which

2

we considered the parties' appeal and cross-appeal from the judgment entered in the Sixth Judicial District Court.

¶6 On February 13, 1991, William H. Lane, Jr., agreed with Hobble Diamond Cattle Company and Kimble Properties to purchase land from Hobble Diamond Cattle Company for $1,650,000 and irrigation equipment from Kimble Properties for $350,000. *H-D Irrigating*, ¶ 10. Subsequently, on April 1, 1991, Lane assigned his rights and his duties regarding the irrigation equipment to H-D Irrigating. Lane was the president of, and sole shareholder in, H-D Irrigating. On May 24, 1991, in accordance with the purchase agreement, H-D Irrigating paid Kimble Properties $150,000 and executed a promissory note in the amount of $200,000. *H-D Irrigating*, ¶ 11.

¶7 Slightly more than a year later, on June 16, 1992, H-D Irrigating and Lane sued Kimble Properties, and Lloyd Kimble, its president, in the Sixth Judicial District Court for alleged misrepresentation and breach of a duty to disclose. They alleged that Kimble falsely represented the condition of the irrigation system and that they had been damaged by its inadequacy. Kimble Properties and Kimble counterclaimed for the balance due for the irrigation equipment. In their counterclaim, the sellers alleged that H-D Irrigating was a mere sham and the alter ego of William H. Lane, Jr.

¶8 While it is not clear what happened during the entire course of the proceeding, it is clear that Kimble's alter ego claim was not pursued in its contentions in the pretrial order. It was not discussed in either the plaintiffs' or defendants' Proposed Findings of Fact or

3

Conclusions of Law, nor was it discussed in the District Court's Findings, Conclusions or Judgment.

¶9 H-D Irrigating's claim and Kimble's counterclaim went to trial on March 1, 1995. Following trial, the District Court found and concluded that Kimble had made a material misrepresentation upon which Lane reasonably relied and by which Lane was damaged in the amount of $99,575. The District Court also found and concluded that H-D Irrigating owed Kimble $200,000 for the irrigation equipment and, after deducting the amount of H-D Irrigating's damage and adding interest, entered judgment for Kimble in the amount of $123,940.96.

¶10 Kimble appealed and H-D Irrigating and Lane cross-appealed the judgment of the District Court. We reversed in part and affirmed in part that judgment on August 10, 2000, and remanded to the District Court for entry of judgment in favor of Kimble and against H-D Irrigating in the amount of $237,495.71. An amended judgment was entered in the District Court on December 4, 2000.

¶11 On May 29, 2001, Kimble Properties filed this action in the District Court for the Fourth Judicial District in Missoula County to collect its judgment from William H. Lane, Jr., personally. In its complaint, it recited the particulars of the original agreement to purchase irrigation equipment; it noted that shortly after the agreement was entered into, Lane assigned his obligations to H-D Irrigating; and, it pointed out that a judgment had been collected against H-D Irrigating.

4

¶12    Kimble then alleged that following entry of judgment, it sought to compel Lane to testify regarding H-D Irrigating's assets but that rather than appear, Lane filed a petition for bankruptcy on behalf of H-D Irrigating pursuant to Chapter 7, Title 11 of the United States Code and received a stay of further proceedings.

¶13    In this action, Kimble has alleged that H-D Irrigating's only business was related to purchase of the irrigation equipment; and, that it was formed by Lane, who was its sole shareholder and president, for the sole purpose of avoiding his obligation to pay for that equipment.  Kimble alleged that H-D Irrigating had not been adequately capitalized to fulfill its obligations under the agreement and that it sold the irrigation equipment, along with the ranch, in 1995 or 1996, without preserving sufficient funds to pay for the equipment. Kimble further alleged that H-D Irrigating had at least $125,000 of liquid assets as recently as July 29, 1998, but that schedules attached to its bankruptcy petition indicate that its only remaining assets have a value of $2618.30.  Finally, Kimble alleged that H-D Irrigating was the mere agent or alter ego of William H. Lane, Jr., and formed solely for the purpose of enabling him to avoid his contractual obligations.  It asks, as a matter of equity, that Lane be held personally responsible for satisfying Kimble Properties' judgment against H-D Irrigating.

¶14    Lane moved the District Court to dismiss Kimble's complaint based on principles of res judicata.  He alleged that because Kimble had alleged alter ego in his original counterclaim, and because the District Court had not pierced the corporate veil in the Sixth

Judicial District Court action, that claim was extinguished and barred by the previous judgment.

¶15 In reliance on the four-part test for application of res judicata established by this Court in *Phelan v. Lee Blaine Enterprises* (1986), 220 Mont. 296, 716 P.2d 601, the District Court concluded that Kimble's claim had not been extinguished by the prior judgment because the subject matter of this action and the issues raised by this action were different from those decided by the Sixth Judicial District Court.

¶16 Lane contends that the District Court has made a mistake of law which, if uncorrected, would cause a significant injustice by requiring that Lane defend against an action which is barred as a matter of law. Lane, therefore, contends that appeal is an inadequate remedy.

ISSUE ONE

¶17 Is this an appropriate case for the exercise of supervisory control?

¶18 In *Plumb v. Fourth Jud. Dist. Court* (1996), 279 Mont. 363, 368-69, 927 P.2d 1011, 1014, we concluded that supervisory control is appropriate where the district court is preceding under a mistake of law and, in so doing, is causing a gross injustice. In this case, Lane contends that he is being asked to re-defend against a claim that was previously made and extinguished by a previous judgment of another district court. If he is correct, he is entitled to summary judgment. If the district court was wrong when it denied his motion for summary judgment, requiring that he defend against the same claim a second time and incur the attendant delay and expense, would cause a gross injustice. Therefore, we conclude that the issue raised by Lane is appropriate for resolution by way of supervisory control.

6

ISSUE TWO

¶19 Did the District Court err when it concluded that the Plaintiff's claim is not barred by principles of res judicata?

¶20 Lane asks that we review and reverse the District Court's denial of his motion for summary judgment. We review a district court's decision to grant or deny summary judgment de novo. *Spinler v. Allen*, 1999 MT 160, ¶ 14, 295 Mont. 139, ¶ 14, 983 P.2d 348, ¶ 14. We consider the same criteria on which the district court relies and which are found at Rule 56(c), M.R.Civ.P., where it states that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

¶21 Lane contends that the doctrine of res judicata bars Kimble's action because Kimble previously sought to hold Lane personally liable for H-D Irrigating's debt on the basis of alter ego and that the current action has been filed on that same basis. Lane relies on this Court's decision in *Hall v. Heckerman*, 2000 MT 300, 302 Mont. 345, 15 P.3d 869. Lane contends that the District Court erred by holding that principles of res judicata do not apply based on the fact that alter ego had not actually been litigated in the first action because this Court held in *Hall* that actual litigation of an issue is not determinative. Lane contends that the doctrine of res judicata bars not only issues litigated, but also those which could have been litigated in the former action and that that includes Kimble's alter ego claim.

7

¶22    Kimble Properties contends that the District Court correctly denied summary judgment because its current alter ego claim was not previously adjudicated and, therefore, is not barred by the doctrine of res judicata. It relies on *Phelan v. Lee Blaine Enterprises* (1986), 220 Mont. 296, 716 P.2d 601. The District Court concluded that *Phelan* was controlling; that it had not been specifically overruled by our decision in *Hall*, and that *Phelan* required denial of Lane's motion for summary judgment.

¶23    In *Phelan*, the claimant filed an action in the Workers' Compensation Court to set aside a previous settlement agreement based on mutual mistake of fact. The trial court dismissed her action as barred by principles of res judicata because of a prior petition in the same court which sought a determination that the amount of her settlement was insufficient in light of her disability. This Court noted that even though she had previously sought a determination that her settlement had been inadequate, the Workers' Compensation Court's previous judgment dealt only with her disability status at that time. We set forth the following test for whether Phelan's claim was barred by principles of res judicata:

> 'These criteria are: (1) the parties or their privies must be the same; (2) the subject matter of the action must be the same; (3) the issues must be the same, and must relate to the same subject-matter; and (4) the capacities of the persons must be the same in reference to the subject-matter and to the issues between them.'

> Of the four criteria set out in *Smith*, the parties agree the important one in the present case is criteria (3) which is the identity of the issues. The rule regarding the identity of the issues is simple. If the issues in the second case were not raised and determined in the first case, then the judgment of the first case does not bar the second action. . . .

8

*Phelan*, 220 Mont. at 299, 716 P.2d at 602-03 (citing *Smith v. County of Mussellshell* (1970), 155 Mont. 376, 378, 472 P.2d 878, 880).

¶24 For the foregoing reason, we held that Phelan's claim to have her settlement set aside as inadequate was not barred by principles of res judicata because, even though raised, that issue had not been decided in the previous action. *Phelan*, 220 Mont. at 301, 716 P.2d at 604.

¶25 In *Hall*, the plaintiffs sought to establish a prescriptive easement over the defendant's property parallel to an easement they had been awarded in prior litigation, but which they subsequently learned did not cross the defendant's property. The defendant moved to dismiss based on the doctrine of res judicata and that motion was granted by the district court. On appeal, Halls contended that the elements of res judicata had not been established because the subject matter and issues raised in the second action were not the same. We held, however, that res judicata bars not only those issues which were actually determined but those which could have been determined. *Hall*, ¶¶ 16, 17. We stated:

> We have held that the doctrine of res judicata bars "not only the issues litigated in the former action, but also issues which might have been litigated in the former action." *Mills v. Lincoln County* (1993), 262 Mont. 283, 286, 864 P.2d 1265, 1267. A judgment is "binding and conclusive between all the parties to the suit and their privies and successors in interest, as to all matters adjudicated therein and as to all issues which could have been properly raised irrespective of whether the particular matter was in fact litigated." *Orlando v. Prewett* (1989), 236 Mont. 478, 481, 771 P.2d 111, 113, *quoting Kramer v. Deer Lodge Farms Co.* (1944), 116 Mont. 152, 156, 151 P.2d 483, 484.

*Hall*, ¶ 16.

¶26 We concluded that Halls could have claimed the easement by necessity in their original action and that, therefore, the issues and subject matter were the same in their second action. On that basis, we affirmed the district court's dismissal of their claim based on the doctrine of res judicata.

¶27 Based on this Court's decision in *Phelan*, which the District Court noted had not been reversed in *Hall*, the District Court concluded that Kimble's alter ego claim was not barred, even though raised in the previous action, because it had not been decided in the previous action, nor was it part of the same transaction that was decided. The District Court relied on *Travelers Insurance Co. v. St. Jude Hospital*, (5th Cir. 1994), 37 F.3d 193, 196-97, for application of the "transactional test" to determine whether the subject matter of the first action and this action are the same.

¶28 We acknowledge that depending on the facts of each case, language in *Phelan* could lead to a result different than one based on the language in *Hall*. We also agree that there is merit to the transaction test applied by the District Court and set forth in the Restatement (Second) of Judgments, § 24 (1980).

¶29 However, for purposes of resolving the issue before us, it is not necessary to establish preference for a *Phelan* approach or a *Hall* approach. We conclude that Kimble's claim against Lane is barred under neither approach. Kimble's alter ego claim was neither decided in the previous litigation nor, based on the facts alleged in this case, could it have been decided in the previous litigation.

¶30    To pierce a corporate veil requires not only proof that H-D Irrigating was the agent or alter ego of William H. Lane, Jr., but that the corporate entity was created to further a wrongful purpose. In *Berlin v. Boedecker* (1994), 268 Mont. 444, 458, 887 P.2d 1180, 1188, we stated that:

> We have defined a two-prong test for piercing the corporate veil. First the trier of fact must find that the defendant was either the alter ego, instrumentality, or agent of the corporation. *Drilcon, Inc. v. Royal Energy Corporation, Inc.* (1988), 230 Mont. 166, 176, 749 P.2d 1058, 1065. Second, the trier of fact must find evidence that the corporate entity was used as a "subterfuge to defeat public convenience, justify wrong, or perpetrate fraud." *Drilcon*, 749 P.2d at 1065.

¶31    Although Kimble alleged in the first cause of action that H-D Irrigating acted as the alter ego of William H. Lane, Jr., it did not allege the second prong of the test for piercing the corporate veil, nor could it have done so. It is apparent from Kimble's complaint in this action that the facts which give rise to the second prong did not even occur until final judgment in the first cause of action was entered.

¶32    The District Court's original Findings, Conclusions and Order, were entered in the Sixth Judicial District Court action on July 14, 1998. Kimble alleges in this complaint that H-D Irrigating still had at least $124,000 of liquid assets in its possession as of July 29, 1998, based on an offer of settlement tendered by H-D Irrigating's attorneys on that date. However, at some subsequent date, Kimble alleges that H-D Irrigating, under Lane's control, liquidated all but $2618.30 of its assets without providing for payment of Kimble's judgment and then filed for bankruptcy protection. All these facts are critical to Kimble's effort to pierce the

11

corporate veil. However, none of these facts were known to Kimble until it sought to examine Lane following entry of the District Court's second amended judgment.

¶33 Our decision is consistent with the approach taken in other jurisdictions where parties have sought to bar efforts to collect judgments by piercing the corporate veil based on the doctrine of res judicata.

¶34 For example, in *Backus v. Watson* (Ala. 1993), 619 So.2d 1342, the plaintiff, after recovering a judgment for damages against an incorporated club, filed an action against the club's previous owner to have him held personally liable for the judgment by piercing the corporate veil. The former owner relied on the doctrine of res judicata as an affirmative defense. In Alabama, as in Montana, the doctrine of res judicata bars a subsequent suit between the same parties on, not only those issues which were litigated, but those which could have been litigated. However, the Alabama Supreme Court held under circumstances similar to those in this case, that the doctrine of res judicata did not bar Backus's action to pierce the corporate veil. The court noted that it was not until postjudgment proceedings that Backus realized that the former owner may have ignored the club's corporate existence and stated that:

> Backus's present action against Watson was based on a cause of action entirely different from the one in which her action against the club was based, and in the present action she sought to litigate an issue that was not litigated, and could not have been litigated, under the pleadings in her action against the club, even though Watson appeared at the trial of that action and apparently participated in the club's defense. The litigation of the central issue presented in this action–whether the club was operated as Watson's alter ego and therefore, whether the "corporate veil" should be pierced–has not been foreclosed by a previous judgment binding as between these parties.

12

> Therefore, the trial court could not have properly relied on the doctrine of res judicata as a basis for its judgment.

*Backus*, 619 So.2d at 1344-345 (citation omitted).

¶35 In *Wells v. A.V. Davis* (Kan. 1979), 603 P.2d 180, the Supreme Court of Kansas came to the same conclusion even though alter ego had been pled in the original action. In that case, Wells had originally sued a moving van company and its principal owner for wages and recovered a judgment against the company. He had alleged that the company was the individual defendant's alter ego. However, that claim was not litigated and no judgment was returned against the individual stockholder. Following entry of the first judgment, Wells attempted to satisfy the judgment but was unsuccessful due to the company's insolvency. He then brought a second action against the same individual owner, again alleging that the company had been his alter ego. The individual owner moved to dismiss the second claim based on a theory of res judicata and the district court granted that motion. However, after noting that in Kansas, as in Montana, the doctrine of res judicata forbids re-litigating not only claims actually presented and considered, but those which might have been presented and decided, the Supreme Court of Kansas concluded that the doctrine did not apply in the facts of that case. The Kansas court concluded it was significant that Wells had no prior knowledge of the company's insolvency and that the premature joinder of the former owner, based on the original alter ego claim, was not determinative.

¶36 In *Macris & Associates, Inc. v. Neways, Inc.* (Utah 2000), 16 P.3d 1214, 1221, the Supreme Court of Utah arrived at the same result based on its conclusion that the plaintiff

13

was not required to bring an alter ego claim in the original action in which damages were required if unaware of the facts which gave rise to the alter ego claim, and for the additional reason that the original claim for damages and the alter ego claim were based on different sets of facts and evidence. Other courts have held that the subsequent alter ego claim is not barred by res judicata because it is not a re-litigation of the original claim but simply an effort to collect the original judgment. *See Matthews Construction Co., Inc. v. Rosen* (Tex. 1990), 796 S.W.2d 692, and *Federal Deposit Ins. Corp. v. Mmahat* (5th Cir. 1992) 960 F.2d 1325.

¶37    We conclude that the action brought in the District Court for the Fourth Judicial District to pierce the corporate veil on the basis that H-D Irrigating, was or is the alter ego of William H. Lane, Jr., is not barred by the doctrine of res judicata because it was neither adjudicated previously in the Sixth Judicial District Court nor were the facts upon which it is based known to Kimble Properties, at the time the complaint and counterclaims were filed in that action, or at any other time during the course of that action. For these reasons, we affirm the order of the District Court denying the motion of William H. Lane, Jr., for summary judgment.

¶38    This case is remanded to the District Court for the Fourth Judicial District for further proceedings consistent with this Opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

14

/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART

Chief Justice Karla Gray, dissenting.

¶39     As in our recent case of *Truman v. Eleventh Jud. Dist. Ct.*, 2003 MT 91, 315 Mont. 265, ___ P.3d ___ (Gray, C.J., dissenting), I respectfully dissent from the Court's decision on Issue 1, and concede that I erred in joining the Court's February 26, 2002, order concluding that this matter is appropriate for supervisory control.  In my view, supervisory control was improvidently granted.  My dissent in the present case is based on grounds similar to those set forth in my *Truman* dissent, and is premised on my growing concerns over the frequency of our exercise of supervisory control over matters pending in the district courts, especially when we cannot keep up with our "stock in trade" case load of appeals.

¶40     In *Truman,* the Court based its exercise of supervisory control jurisdiction on the fact that the case presented an issue of first impression in Montana.  My dissent pointed out that if we accepted every question of first impression arising in Montana on supervisory control, we would become a court of first resort, rather than last resort, far too often.  Here, the Court concludes at ¶ 18 that exercising supervisory control over a trial court's denial of summary judgment on the matter of whether *res judicata* controls is appropriate because, if the trial court erred in denying summary judgment, Lane would have to defend against the same claim a second time, with the attendant delay and expense, thereby causing a gross injustice. While purporting to rely on *Plumb*, it is clear the Court is now abandoning both the "extraordinary circumstances" and "inadequate remedy of appeal" factors in that case.  In other words, it appears that this Court will now--whenever it chooses--exercise supervisory control over any legal ruling in any trial court on an issue of law when delay and expense

17

might accompany finishing the trial court proceedings and pursuing an appeal. This is a far cry from what I believe *Plumb* intended.

¶41 In *Truman*, the Court also included within its exercise of supervisory control discretionary acts by the trial court relating to the admission of evidence. The numbers of pretrial discretionary rulings by trial courts across Montana every year must surely be in the tens of thousands. Will we spend this Court's limited time resource entertaining ever-increasing numbers of petitions for supervisory control and responses based on discretionary pretrial rulings, which take considerable time to read even in the event we deny supervisory control, and at the same time intrude ever more into the trial courts' proceedings, authority and scheduling difficulties?

¶42 At the bottom line, the Court is using supervisory control jurisdiction to transform the traditional structures and roles of the trial courts and this Court. A "gross injustice" apparently now means only an erroneous--or potentially erroneous--ruling or an alleged pretrial abuse of discretion which, if not corrected by this Court's intervention, will permit the proceedings in the trial court to proceed in their normal course with their associated delays and expenses. In the future, will any rational attorney refrain from petitioning for supervisory control on any nonappealable ruling at any stage in trial court proceedings? On what grounds will the Court ever find reason to deny supervisory control? And how in the world does such an approach comport with either the trial courts' general authority to control the proceedings before them or our primary role as an appellate court?

¶43 In the past, we commonly denied supervisory control in cases involving an interlocutory, nonappealable order reviewable on appeal from a final judgment. *See, e.g.*,

18

*State ex rel. Kosena v. Dist. Ct.* (1977), 172 Mont. 21, 560 P.2d 522. In cases such as this one, which involve a ruling denying summary judgment on legal grounds, the rationale for rejecting review via supervisory control is that an order denying summary judgment is subject to later review by the trial court if circumstances warrant. "[I]n the usual case good judicial administration requires freedom of action by the district court prior to trial and noninterference on our part at this stage." *See Kosena*, 172 Mont. at 22, 560 P.2d at 523. We also observed in *Kosena* that only extraordinary and compelling circumstances--"beyond simply requiring a party to proceed to trial"--should warrant review via supervisory control. *See Kosena*, 172 Mont at 22-23, 560 P.2d at 523. The same rationale is appropriate with regard to a trial court ruling granting summary judgment. Indeed, it is my view that the *Kosena* reasoning is as valid--and as critical to the proper administration of justice in Montana--today as it was in 1977.

¶44 I admit that I joined the Court's decision in *Plumb* in November of 1996. I thought the Court meant *all* the things said therein, including the necessity of extraordinary circumstances and gross injustice. And I have joined in any number of opinions since that time which, with the hindsight which is so often more accurate, seemed like appropriate exercises of supervisory control at the time. I cannot undo those decisions; but I can refrain from joining in increasing numbers of such cases.

¶45 In the six-year period from 1991 through 1996--*Plumb* having been decided on November 22, 1996--this Court granted supervisory control, in whole or in part, in 35 cases. In the six years following *Plumb*--that is, 1997 through 2002--we did so in 60 cases. I see no signs of the numbers declining and, as I suggested in my *Truman* dissent and above, such

a decline is altogether unlikely when the Court continues to show such a lack of restraint in addressing cases seeking supervisory control. Indeed, I submit that the numbers will continue to increase.

¶46 Looking at the opinions on *appeals* issued by this Court for the relatively short period from the beginning of 2001 to early this month provides a frightening picture of where we may be headed if the Court continues expanding the cases in which it determines supervisory control jurisdiction is appropriate. Approximately 39 cases involved an issue relating to the grant or denial by a trial court of a motion to dismiss in a civil case. The same number of cases involved an issue relating to the denial by trial courts of motions to dismiss in criminal cases. An additional 11 appeals raised the issue of whether a trial court erred in denying a speedy trial challenge by a criminal defendant. These 90 or so cases on *appeal* involved pretrial, interlocutory legal rulings by trial courts properly raised on appeal. Under the Court's expanded view of supervisory control, it appears that all of these issues can now be presented via a petition for supervisory control.

¶47 In addition, over the same short time frame, we have addressed a trial court's *res judicata* ruling, such as that involved and accepted for supervisory control in the present case, in 13 appeals. Similarly, from January of 2001 until early April of 2003, we issued opinions on *appeal* addressing the grant or denial of summary judgment in approximately 100 cases. Presumably, all *res judicata* and summary judgment rulings now may be raised in petitions for supervisory control and will be considered by this Court.

¶48 Finally, *Plumb* requires not just a gross injustice, but a mistake of law by a trial court. In the present case, the Court *affirms* the District Court's legal ruling. Neither a gross injustice nor a mistake of law is present here.

¶49 I simply cannot agree with the Court's ever-expanding definition of whether cases are appropriate for our exercise of what is supposed to be "extraordinary" supervisory control jurisdiction. It is far too intrusive into our trial courts' appropriate spheres of action. It is far too unfair to the litigants who have proceeded through trial court proceedings, who are before this Court on appeal awaiting the "end of the road" in their long-standing legal disputes, and who must wait even longer because of the excessive numbers of supervisory control petitions the Court is accepting. And finally, if we intend to continue to increase our work load by encouraging ever more numerous petitions for supervisory control, we should have the decency to quit speaking publicly about our crushing work loads and the long hours we put in.

¶50 I dissent.

/S/ KARLA M. GRAY

21