FILED

04/20/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0180

DA 20-0180

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 95N

CARA FENNESSY,

       Plaintiff and Appellee,

v.

MARK KNIGHT and LAURA KNIGHT,

       Defendants and Appellants.

_____

MARK KNIGHT and LAURA KNIGHT,

       Third-Party Plaintiffs and Appellants,

v.

HSBC BANK USA and SPECIALIZED LOAN SERVICING, LLC.,

       Third-Party Defendants and Appellees.

_____

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV-19-46
                Honorable Leslie Halligan, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

              Brian J. Miller, Morrison, Sherwood, Wilson, and Deola PLLP, Helena,
              Montana

       For Appellees:

              Doug James, Ariel Overstreet-Adkins, Moulton Bellingham PC, Billings,
              Montana (for HSBC Bank USA and Specialized Loan Servicing, LLC)

              David J. Steele, Geiszler Steele, PC, Missoula, Montana
              (for Cara Fennessy)

Submitted on Briefs:  October 21, 2020

Decided:  April 20, 2021

Filed:

_____
                 Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited, and does not serve as precedent. The case title, cause number, and disposition will be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Laura and Mark Knight (Knights) appeal the December 2019 judgment of the Montana Fourth Judicial District Court, Missoula County, granting Plaintiff Cara Fennessy (Fennessy) partial summary judgment on her statutory wrongful detainer claim. They similarly appeal the court's March 2020 judgment granting HSBC Bank USA (HSBC) and Specialized Loan Servicing, LLC (SLS) judgment on the pleadings on Knights' asserted third-party declaratory judgment, federal Fair Debt Collection Practices Act (FDCPA), and Montana Consumer Protection Act (MCPA) claims. We affirm.

¶3 In January 2007, Knights refinanced the mortgage on their Missoula, Montana home with a $603,000 loan from HOME123 Corporation, a subsidiary of New Century Mortgage Corporation (New Century). A new Montana Small Tract Financing Act deed of trust[1] (mortgage) secured the new note. The mortgage named Mortgage Electronic Registry Service (MERS) as the lender nominee. In April 2007, New Century filed for federal Chapter 11 bankruptcy. As a result, MERS assigned the mortgage to HSBC in April 2008.

---

[1] *See* § 71-1-302, MCA, et seq.

Wells Fargo Bank, N.A. (Wells Fargo or Wells) serviced the loan through a subsidiary from 2007 through 2018. SLS succeeded Wells as the loan servicer in 2018.

¶4 Knights were amateur real estate investors. Due to the 2007 subprime mortgage crisis and resulting national economic downturn, they experienced financial difficulty and made no payments on their home mortgage after December 10, 2007.[2] After declaring a default, HSBC/Wells, through the mortgage trustee, noticed a multitude of non-judicial foreclosure sales on the property between April 2008 and June 2018. Knights repeatedly delayed foreclosure until 2018, however, through various foreclosure sale postponements and cancellations resulting from multiple attempts to obtain distressed loan modifications, filing for federal Chapter 7 bankruptcy in 2009, filing for federal Chapter 13 bankruptcy in 2014, and filing a federal lawsuit against HSBC/Wells Fargo in 2015.[3]

---

[2] They further breached their mortgage obligations by failing to make *any* property tax payments and making no homeowners' insurance payments after 2009. As of February 2018, Knights' initial $603,000 loan balance had thus ballooned to roughly $1.27 million, including $599,322.94 in principal, $527,513.55 in accrued interest, $27,671 in late fees, $94,190.73 in escrow advances, and $21,460.93 in other fees and advances.

[3] All but one of the modification requests were under the federal Home Affordable Modification Program (HAMP) introduced in 2009 to assist qualified homeowners avoid foreclosure through loan restructuring which would provide more affordable payments. *See Anderson v. ReconTrust Co., N.A.*, 2017 MT 313, ¶ 4, 390 Mont. 12, 407 P.3d 692 (citation omitted). Upon satisfaction of certain eligibility requirements, HAMP ultimately required applicants to timely make specified lower payments on a trial basis for three consecutive months. *Anderson*, ¶ 4. According to an expert report filed by Wells Fargo in the 2015 lawsuit, and later attached to HSBC's answer to Knights' third-party complaint here, Wells Fargo processed seven loan modification requests, and two requests for deed-in-lieu of foreclosure, from Knights. In April 2009, Knights filed for Chapter 7 bankruptcy, but the bankruptcy court later lifted the automatic stay to allow Wells Fargo to continue servicing the loan and pursue foreclosure. Wells tentatively approved a HAMP application in September 2009, but Knights failed to make the trial payments. In July 2013, Wells tentatively approved another HAMP modification with significantly lower trial payments, but Knights failed to make the first two and withdrew their application. Upon notice of another

4

¶5     In the 2015 lawsuit, Knights asserted a declaratory judgment claim, various Montana common law tort claims (negligence, negligent misrepresentation, and constructive fraud), and a MCPA claim—all essentially based in whole or in part on the assertion that HSBC/Wells had no legal right or interest to enforce and foreclose on the 2007 mortgage due to the lack of a valid assignment of interest from the original mortgagee (New Century) or nominee (MERS) in 2007-08.[4]  In June 2016, the federal district court granted HSBC/Wells judgment on the pleadings that, as pled, Knights' asserted Montana tort and MCPA claims accrued no later than 2011, and were thus respectively time-barred prior to 2015 by the applicable 2-year and 3-year Montana statutes of limitation.

¶6     In October 2016, based on Knights' central assertion that HSBC/Wells Fargo had no legal right to enforce or foreclose on their mortgage due to the lack of a valid assignment from the original mortgagee or nominee in 2007-08, the federal court concluded on the parties' cross-motions for summary judgment that Knights' declaratory judgment claim accrued no later than 2008.[5]  "In the absence of any counter-argument from the Knights," the court then applied the rule stated in 26 C.J.S. *Declaratory Judgments* § 120 (West 2016)

---

trustee's sale in February 2014, Knights reinitiated the HAMP process but, while the process was still pending, filed for Chapter 13 bankruptcy to stay the noticed sale.

[4] Knights' asserted tort claims were also predicated on alleged negligent and fraudulent loan servicing conduct by Wells Fargo related to their distressed loaned modification applications and Wells Fargo's mortgage foreclosure conduct.

[5] *Knight v. Wells Fargo Bank, N.A.*, No. CV-15-56-M-DLC (D. Mont. Oct. 8, 2016).

that, in the absence of a more specifically governing period of limitations, a declaratory judgment claim is subject to:

> the period of limitation that [would] appl[y] to the underlying action at law or suit in equity . . . . If a statute of limitations would bar the claim if asserted in an action seeking relief [on the same legal principles and predicate facts] other than [by] declaratory judgment, then the same limitation period would bar assertion of that claim in a declaratory judgment action.

(Citing *Cloud Found., Inc. v. Kempthorne*, 546 F. Supp. 2d 1003, 1012 (D. Mont. 2008) (declaratory judgments are subject to applicable statutes of limitations) and *City of St. Paul v. Evans*, 344 F.3d 1029, 1036 (9th Cir. 2003) (statutes of limitation apply to declaratory judgment claims as well as "time-barred claims masquerading as [affirmative] defenses.").) Based on the substantive essence of the declaratory judgment claim, the court rejected Knights' assertion that the 8-year contract statute of limitations applied. The court concluded, rather, that the claim was in essence or akin to a claim that HSBC was acting under a tortiously converted third-party "instrument," as defined by the Uniform Commercial Code (UCC).[6] The court thus granted HSBC/Wells summary judgment that, as pled, the declaratory judgment claim was time-barred after 2011 based on the 3-year statute of limitations applicable to conversion claims under the UCC.[7] The federal court judgments were affirmed on appeal in April 2018.[8]

---

[6] *See* § 30-3-104(1)-(2), MCA.

[7] *See* § 30-3-122(7), MCA.

[8] *Knight v. Wells Fargo Bank, N.A.*, Nos. 16-35895 and 16-35937, 717 Fed. App'x. 749 (9th Cir. Apr. 5, 2018).

¶7     In June 2018, the mortgage trustee noticed another foreclosure sale on Knights'

property, this time for November 1, 2018.  The successful bidders (Fennessy and LisaKay

Epstein) purchased the property at sale for $651,000.  Following recording of the trustee's

deed, the purchasers issued certified mail notice to Knights pursuant to § 71-1-319, MCA

(trustee's sale purchaser's right to possession on tenth day following sale) demanding that

they vacate the property no later than January 13, 2019.  Upon disregard of the demand,

and pursuant to §§ 71-1-318, -319, 70-27-104, -105, and -207, MCA, Fennessy filed a

statutory wrongful detainer claim against Knights for possession, treble damages, and

attorney fees.  Knights answered by denial and affirmative defense asserting that the

purchasers lacked valid title to the mortgaged property because HSBC and "its servicing

agent[]" had no legal right to enforce the 2007 mortgage due to the lack of valid assignment

from the original mortgagee or nominee.[9]  In December 2019, the District Court granted

Fennessy partial summary judgment that the purchasers were entitled to possession because

they were good faith purchasers under §§ 71-1-319 and 70-20-404, MCA, and that res

judicata precluded Knights from again challenging the validity of HSBC's right to enforce

and foreclose on their mortgage.

¶8     Knights had previously filed a third-party complaint against HSBC/SLS seeking

declaratory judgment that the 2018 trustee's sale, and resulting trustee's deed, were invalid

---

[9] In support of their subsequent opposition to Fennessy's motion for partial summary judgment, Knights referenced 60-plus exhibits asserted in support of their 2015 federal court claims against HSBC/Wells Fargo.

due to lack of a valid assignment of the mortgage to HSBC. The third-party complaint also asserted a FDCPA claim, alleging unlawful "threatening . . . nonjudicial [foreclosure] action" without "right to possession" under "an enforceable security interest,"[10] and a MCPA claim, alleging similar unfair or deceptive practices. In March 2020, the District Court granted HSBC/SLS judgment on the pleadings that, based on the 2016 federal court judgments, res judicata precluded Knights' asserted third-party claims in 2019. After later stipulating to a $90,000 judgment in favor of Fennessy on the damages portion of her wrongful detainer claim, Knights timely appealed the res judicata rulings.

¶9 We review district court judgments granting or denying summary judgment de novo for compliance with M. R. Civ. P. 56. *Belanus v. Potter*, 2017 MT 95, ¶ 13, 387 Mont. 298, 394 P.3d 906. Summary judgment is proper only when there is no genuine issue of material fact on the "pleadings, the discovery and disclosure materials on file, and any affidavits," and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Gibbs v. Altenhofen*, 2014 MT 200, ¶ 8, 376 Mont. 61, 330 P.3d 458. Whether a genuine issue of material fact exists or whether a party is entitled to judgment as a matter of law are conclusions of law we review de novo for correctness. *Davidson v. Barstad*, 2019 MT 48, ¶ 17, 395 Mont. 1, 435 P.3d 640 (citation omitted).

¶10 At the close of pleadings, a party may move for judgment on the pleadings in sufficient time "not to delay trial." M. R. Civ. P. 12(c). On a Rule 12(c) motion, the court

---

[10] *See* 15 U.S.C. § 1692(f)(6).

8

must take all well-pled factual allegations in the non-moving party's pleadings as true in the light most favorable to that party, and then grant judgment only if no issue of material fact exists on the face of the pleadings, facts incorporated by reference therein, attached exhibits, and material facts subject to judicial notice, and "the moving party is entitled to judgment as a matter of law." *Firelight Meadows, LLC v. 3 Rivers Telephone Coop., Inc.*, 2008 MT 202, ¶¶ 9-12, 344 Mont. 117, 186 P.3d 869 (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1367, 206-07 (3d ed. 2004)). *Accord Paulson v. Flathead Conservation Dist.*, 2004 MT 136, ¶ 17, 321 Mont. 364, 91 P.3d 569. Whether a party is entitled to Rule 12(c) judgment on the pleadings is a question of law reviewed de novo for correctness. *Firelight*, ¶ 12.

¶11 Res judicata, also known as claim preclusion, is an equitable doctrine that furthers the policy that litigation must eventually reach a definite end, and thus precludes a party "from incessantly waging piecemeal, collateral attacks against [prior] judgments." *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 18, 366 Mont. 78, 285 P.3d 494 (quoting *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267). In contrast to the related doctrine of collateral estoppel (also known as issue preclusion), res judicata bars the relitigation of claims and constituent issues in a second or subsequent action that were either litigated, or could have been, between the parties in a prior action. *Brilz*, ¶ 21. Res judicata applies when: (1) the parties or their privies are the same in both actions; (2) both actions involve the same subject matter; (3) the issues in the latter action are the same in relation to the subject matter as those raised, or that could have been raised, between the

9

parties in the prior action; (4) "the capacities of the parties are the same in reference to the subject matter and the issues between them"; and (5) the prior action resulted in a final judgment on the merits by a court of competent jurisdiction. *Brilz*, ¶ 22 (citations omitted). Whether the doctrine of res judicata applies is a question of law reviewed de novo for correctness. *Thornton v. Alpine Home Ctr.*, 2001 MT 310, ¶ 10, 307 Mont. 529, 38 P.3d 855.

¶12 Here, Knights do not dispute that the 2018 trustee's sale purchasers were good faith purchasers of the subject property under §§ 71-1-319 and 70-20-404, MCA. They narrowly assert, rather, that the court erroneously concluded that their affirmative defense to Fennessy's wrongful detainer claim, and their related third-party claims against HSBC, are barred by res judicata. Citing *Lane v. Mont. Fourth Jud. Dist. Ct.*, 2003 MT 130, 316 Mont. 55, 68 P.3d 819, they assert that res judicata applies only to matters actually "raised and determined in the first case," and thus does not apply here because the 2016 federal court judgments were based on procedural statute of limitations defenses and the court "expressly exempted from its summary judgment . . . any factual determination" as to whether HSBC held "an enforceable security interest in the Knights' mortgage." (original emphasis omitted). We disagree.

¶13 Res judicata "bars not only issues which were previously litigated, but also issues which could have been litigated in the prior proceeding." *Loney v. Milodragovich, Dale & Dye, P.C.*, 273 Mont. 506, 510, 905 P.2d 158, 161 (1995) (original emphasis omitted). *Accord Fisher v. State Farm Gen. Ins. Co.*, 1999 MT 308, ¶ 10, 297 Mont. 201, 991 P.2d

452; *State ex rel. Harlem Irr. Dist. v. Mont. Seventeenth Jud. Dist. Ct.*, 271 Mont. 129, 134, 894 P.2d 943, 946 (1995); *Kimpton v. Jubilee Placer Mining Co.*, 22 Mont. 107, 109, 55 P. 918, 919 (1899). In *Lane*, a previously adjudicated judgment creditor subsequently asserted an "alter ego" personal liability claim against the president and sole shareholder of the corporate debtor, based on the same debt previously adjudicated against the corporation. *Lane*, ¶¶ 5-13. The president-shareholder asserted that res judicata precluded the subsequent alter ego/corporate veil-piercing claim because the creditor had similarly asserted in the prior action that the corporation was merely the alter ego of the president-shareholder. *Lane*, ¶ 14. In affirming the district court's denial of the president-shareholder's motion for summary judgment, we held that res judicata did not apply because the second prong of the corporate veil-piercing claim (*i.e.*, creation or use of the corporate entity "to further a wrongful purpose") was neither alleged, nor otherwise at issue, in the prior action, and that the creditor in any event had no prior opportunity to assert the veil-piercing claim because the facts alleged in support of the second prong of the claim did not occur until *after* entry of the prior judgment. *Lane*, ¶¶ 30-37.

¶14    In contrast here, as pled, the essential factual and legal gravamen of Knights' asserted affirmative defense against Fennessy's claim, and asserted third-party claims, is that HSBC had no legal right to enforce their mortgage under a valid assignment from the original mortgagee or nominee in 2007-08. We acknowledge that Knights' asserted affirmative defense and third-party claims also alleged factual circumstances that occurred in or after 2013, but only as evidence of HSBC's subsequent awareness of the alleged

11

defects and irregularities in its presumed acquisition of the mortgage by valid assignment in 2007-08. Consequently, those additional factual averments do not state a basis for the defense and third-party claims independent of the alleged defective assignment in 2007-08. Unlike in *Lane*, and to the extent allowed by law, Knights had full and fair opportunity in the 2015 federal court action to challenge the validity of HSBC's right to enforce their 2007 mortgage and note. *Lane* is thus distinguishable and inapplicable here.

¶15 Under the Rules of Civil Procedure, a prior Rule 12(b)(6) dismissal, Rule 12(c) judgment on the pleadings, or Rule 56 summary judgment constitutes a prior final judgment on the merits for purposes of res judicata and collateral estoppel. *See Brilz*, ¶¶ 26-30 (Rule 12(b)(6)); *Firelight*, ¶ 10 (Rule 12(c) judgment on the pleadings effects "a judgment on the merits . . . [when no genuine issue of material fact exists] on the content of the competing pleadings, exhibits thereto, matters incorporated by reference . . ., and any facts of which the district court will take judicial notice"—quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1367, 206-07 (3d ed. 2004)); *Hollister v. Forsythe*, 277 Mont. 23, 27-30, 918 P.2d 665, 667-69 (1996) (Rule 56); *Smith v. Schweigert*, 241 Mont. 54, 58-60, 785 P.2d 195, 198 (1990) (Rule 56). Here, for purposes of res judicata, the 2016 federal court judgments were final judgments on the merits on Knights' assertions, in various forms, that HSBC had no legal right or interest to enforce their mortgage. Their subsequently asserted 2019 declaratory judgment, FDCPA, and MCPA claims have the same essential gravamen. Their out-of-context reference to the federal court's statement, that it did not make "any factual determination" as to whether

12

HSBC had "an enforceable security interest in the Knights' mortgage," is of no avail because it merely referenced the fact that the court did not reach that issue because the claim was conclusively precluded as a matter of law by the applicable statute of limitations. Knights dispute no other element of res judicata here. We hold that the District Court correctly concluded that res judicata precluded their affirmative defense to Fennessy's wrongful detainer claim and their asserted declaratory judgment, FDCPA, and MCPA claims against HSBC/SLS.

¶16 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. Affirmed.

/S/ DIRK M. SANDEFUR

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE