# FILED

August 21 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0275

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 184

CANDICE BRILZ,

      Plaintiff and Appellant,

  v.

METROPOLITAN GENERAL
INSURANCE COMPANY,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 08-723
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Rex Palmer, Attorneys Inc., P.C., Missoula, Montana

      For Appellee:

      Fred Simpson, Wilton H. Strickland, Bohyer, Simpson & Tranel, P.C.,
      Missoula, Montana

Submitted on Briefs:  February 22, 2012

Decided:  August 21, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Candice Brilz filed an action in Montana state court purportedly asserting statutory and common law bad-faith claims against Metropolitan General Insurance Company (Metropolitan). Metropolitan removed the action to federal court and filed a motion for summary judgment, which the federal court granted. Thereafter, Brilz commenced the instant declaratory judgment action in the Fourth Judicial District Court, Missoula County, seeking a determination that she may pursue her common law bad-faith claim against Metropolitan. Because the statute of limitations on that claim had since expired, Brilz requested a ruling that she may pursue the claim pursuant to § 27-2-407, MCA, or this Court's doctrine of equitable tolling. The District Court dismissed the action, and Brilz now appeals.

¶2 The sole issue on appeal is whether Brilz is entitled to pursue her common law bad-faith claim. Brilz again argues that she may do so under § 27-2-407, MCA, or the equitable tolling doctrine. We conclude, however, that principles of claim preclusion bar her from filing a second action against Metropolitan arising out of the same underlying facts. We accordingly affirm the District Court's judgment.

## BACKGROUND

¶3 Brilz was injured and suffered property damage in an automobile collision which occurred in Missoula on August 14, 1998. She alleges that the driver of the other vehicle, David Kidder, was entirely at fault. At the time of the accident, Kidder was insured by Metropolitan. His policy included coverage in the amount of $25,000 for personal injury to one person.

2

¶4     Brilz submitted a claim to Metropolitan seeking to recover under Kidder's policy. On January 8, 2001, Metropolitan offered to settle with Brilz by tendering the $25,000 policy limits. Brilz alleges that this only occurred after "numerous communications and requests" on her part. Brilz accepted Metropolitan's offer on February 2, 2001, thus settling her insurance claim.

¶5     One year and five days later, on February 7, 2002, Brilz filed a lawsuit in the Fourth Judicial District Court against Metropolitan regarding the manner in which Metropolitan had adjusted her claim for insurance benefits. In paragraphs 7 through 9 of her complaint, Brilz alleged that Metropolitan had violated the Unfair Trade Practices Act by failing to reasonably investigate her claim and by failing to effectuate prompt, fair, and equitable settlement of her claim. *See* § 33-18-201(4), (6), MCA. Additionally, in paragraphs 11 and 12 of her complaint, Brilz alleged that Metropolitan knew it was obligated to pay her claim but nevertheless withheld benefits, and in so doing acted "oppressively, maliciously and outrageously towards Plaintiff, with conscious disregard to Plaintiff's known rights and with the intention of wrongfully interfering with Plaintiff's prospective economic advantage and property interest in such benefits and of intentionally causing unjust and cruel hardship and severe emotional distress to Plaintiff." Brilz further alleged that Metropolitan "acted to and did vex, injure and annoy Plaintiff," and that in failing and refusing to timely and reasonably pay benefits based upon all available information, Metropolitan "acted wrongfully and unreasonably."

¶6     Metropolitan removed the action to the United States District Court for the District of Montana based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a)(1), 1441(a), (b).

The parties then filed cross-motions for summary judgment on the question whether Brilz's claims are time barred. The federal district court concluded, first, that Brilz's statutory claim under the Unfair Trade Practices Act is barred by § 33-18-242(7)(b), MCA, which prescribes a one-year statute of limitations on an action by a third-party claimant against an insurer. Brilz argued that her complaint also set forth a separate common law bad-faith claim to which a three-year statute of limitations applied. The federal district court ruled, however, that Brilz had not alleged such a claim. The court reasoned that her complaint "contains no allegations that [Metropolitan] acted in 'bad faith,' breached its duty of good faith and fair dealing, or otherwise breached some duty 'independent of statute or of insurance contract' " (quoting *St. Paul Fire & Marine Ins. Co. v. Cumiskey,* 204 Mont. 350, 357, 665 P.2d 223, 226 (1983)).[1] Citing paragraphs 7 through 9 of the complaint, the federal district court observed that Brilz had alleged violations of § 33-18-201(4) and (6), MCA, and from this the court then reasoned that she "bases the allegations in her complaint entirely on statutory duties, and does not allege the material elements of a common law bad faith claim." The court did not identify what it thought "the material elements of a common law bad faith claim" were, however. Nor did the court specifically cite or discuss paragraphs 11 and 12 of Brilz's complaint.

¶7    The United States Court of Appeals for the Ninth Circuit affirmed in a memorandum opinion issued October 19, 2007. *Brilz v. Metlife Auto & Home,* 251 Fed.

---

[1] The complete sentence in *St. Paul Fire & Marine*, 204 Mont. at 357, 665 P.2d at 226, from which the federal district court quoted, states: "We first recognized that an insurance company has a duty independent of statute or of insurance contract to settle claims in good faith with its insureds in *Lipinski v. The Title Insurance Company* (1982), 201 Mont. 1, 655 P.2d 970."

4

Appx. 458 (9th Cir. 2007). The court first concluded that Brilz's statutory claim under the Unfair Trade Practices Act is time barred. *Brilz*, 251 Fed. Appx. at 459-60. Turning then to the question whether Brilz had alleged a common law claim, the court assessed her complaint under Rule 8(a)(2) of the Federal Rules of Civil Procedure. Doing so, the court held that Brilz's pleadings failed to set forth a common law bad-faith claim because although her complaint "explicitly alleged" that Metropolitan had violated the Unfair Trade Practices Act, it "made no mention of any common law claim." *Brilz*, 251 Fed. Appx. at 460. The Ninth Circuit concluded that Brilz's complaint "provided the court and defendant ample notice of the statutory claim, but no meaningful notice of any purported common law claim. Nor does she point to anything in the record that would support any such claim." *Brilz*, 251 Fed. Appx. at 460.

¶8 Following the federal courts' termination of her 2002 action, Brilz commenced the present action in the Fourth Judicial District Court. She filed her complaint in June 2008 and an amended complaint in May 2009. Brilz did not seek to renew her statutory claim against Metropolitan; rather, she requested a declaration that she may pursue her common law claim—even though, by this point, the statute of limitations on that claim had already run—based on two theories.

¶9 Brilz's first theory was premised on § 27-2-407, MCA,[2] which states:

> If an action is commenced within the time limited for the action and
> . . . the action is terminated in any other manner than by a voluntary

---

[2] Brilz invoked the 2007 version of § 27-2-407, MCA. Although the Legislature has since amended the statute, *see* Laws of Montana, 2009, ch. 56, § 602, the amendments did not materially change the statute. Thus, the current (2011) version of § 27-2-407, MCA, is quoted here.

discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action for the same cause after the expiration of the time limited and within 1 year after [the] . . . termination.

Brilz alleged that this statute applied to her common law claim because: she filed her initial complaint against Metropolitan in state court within the statute of limitations for common law bad-faith actions; her initial complaint properly pleaded an action for common law bad faith under Montana's pleading rules; Metropolitan removed the action to federal court where the action was terminated, not on the merits, but because Brilz's complaint did not meet federal pleading rules; and there was still time to file a new action for the same cause within one year after the termination of her first action.

¶10 Brilz's second theory for pursuing her common law claim was premised on the doctrine of equitable tolling. "Equitable tolling allows in limited circumstances for an action to be pursued despite the failure to comply with relevant statutory filing deadlines." *Lozeau v. GEICO Indem. Co.*, 2009 MT 136, ¶ 14, 350 Mont. 320, 207 P.3d 316 (listing "the requirements a party must demonstrate for application of the doctrine"). Brilz alleged that this doctrine applied because: she acted reasonably and in good faith in filing her first action in state court; Metropolitan was provided with timely notice of her common law claim because it was filed within the applicable statute of limitations and it was properly pleaded under Montana's pleading rules; Brilz acted reasonably and in good faith in seeking to pursue her "renewed" common law action following the termination of her first action in the federal courts; and Metropolitan has not been prejudiced with respect to its ability to gather evidence in defense of her claim.

6

¶11 The District Court rejected Brilz's arguments under both theories. With respect to § 27-2-407, MCA, the court concluded that, pursuant to the determination by the federal courts, Brilz failed to allege a common law bad-faith claim in her prior suit. The District Court agreed with Metropolitan that Brilz was essentially lodging "a collateral attack" on the federal courts' judgment, contrary to § 26-3-201, MCA.[3] The court also reasoned that Brilz was barred by principles of issue preclusion from relitigating the question whether her original complaint contained a common law claim in addition to her statutory claim. As for equitable tolling, one of the requisites for applying this doctrine is "timely notice to the defendant within the applicable statute of limitations in filing the first claim." *Lozeau*, ¶ 14 (internal quotation marks omitted). The District Court concluded that Brilz had not provided such notice. In particular, the court stated that "the Plaintiff has never set forth 'any facts' upon which she relies in pleading statutory bad faith or common law bad faith, and therefore, just as was the case in the federal court, the Plaintiff has failed to adequately plead her bad faith claims against the Defendant in state court."

¶12 Brilz now appeals from the District Court's rulings as to the application of § 27-2-407, MCA, and equitable tolling. We note that in October 2008, while the instant declaratory judgment action was still pending in the District Court, Brilz filed a separate action in the District Court asserting her common law bad-faith claim. She did so in

---

[3] "[A] judgment or final order in an action or special proceeding before a court or judge . . . of the United States having jurisdiction to pronounce the judgment or order . . . is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding." Section 26-3-201(2), MCA.

7

order to comply with the one-year deadline of § 27-2-407, MCA. Metropolitan removed that action to federal court based on diversity jurisdiction and then moved for summary judgment arguing that § 27-2-407, MCA, cannot save Brilz's common law claim. The federal district court, however, decided that it should stay the action, not only because the issues had already been fully briefed in state court and the state court was the better forum for determining the parties' rights under the governing state law, but also because the federal district court did not want to "promote forum shopping," which the court concluded was Metropolitan's motive in removing Brilz's renewed bad-faith action. The federal district court is holding Brilz's action in abeyance until the conclusion of the present declaratory judgment action.

## STANDARDS OF REVIEW

¶13 We review de novo a district court's interpretation and application of a statute and a district court's conclusions of law. *Mosley v. Am. Express Fin. Advisors, Inc.*, 2010 MT 78, ¶ 10, 356 Mont. 27, 230 P.3d 479; *Krutzfeldt Ranch, LLC v. Pinnacle Bank*, 2012 MT 15, ¶ 13, 363 Mont. 366, 272 P.3d 635. This includes a district court's application of claim preclusion or issue preclusion, which is an issue of law that we review for correctness. *Touris v. Flathead County*, 2011 MT 165, ¶ 10, 361 Mont. 172, 258 P.3d 1; *Estate of Eide v. Tabbert*, 272 Mont. 180, 183, 900 P.2d 292, 294-95 (1995). We also review de novo whether the factual circumstances warrant the grant of an equitable exception to a statutory filing deadline. *BNSF Ry. Co. v. Cringle*, 2012 MT 143, ¶ 16, 365 Mont. 304, 281 P.3d 203. A district court's underlying factual determinations, however, are reviewed for clear error. *Cringle*, ¶ 16.

8

**DISCUSSION**

¶14 *Whether Brilz is entitled to pursue her common law bad-faith claim.*

¶15 The parties' arguments in this case reflect two competing policies in the law. On one hand, "[t]he policy of the law is to favor trial on the merits." *Schmitz v. Vasquez*, 1998 MT 314, ¶ 27, 292 Mont. 164, 970 P.2d 1039. We declined in *Schmitz* "to elevate form over substance," noting that "[t]o bar [the plaintiff] from the courthouse because of procedural irregularities from which [the defendant] could show no prejudice would do nothing to further the goals and policies of the rules of civil procedure." *Schmitz*, ¶ 27. The policy that disputes should be resolved on their merits also underlies the rule that judgments by default are not favored. *See Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 17, 338 Mont. 423, 166 P.3d 451; *Nikolaisen v. Advance Transformer Co.*, 2007 MT 352, ¶ 14, 340 Mont. 332, 174 P.3d 940.

¶16 Similarly, the fundamental purpose of § 27-2-407, MCA, commonly referred to as the "saving statute," is to allow a plaintiff to have her claim decided on its merits despite the expiration of the statute of limitations. As the Court of Appeals observed in *Allen v. Greyhound Lines, Inc.*, 656 F.2d 418, 422 (9th Cir. 1981):

> The saving statute is designed to avoid the harsh forfeiture of plaintiff's rights where the plaintiff diligently and in good faith pursues an action only to have it dismissed on procedural grounds. *Tietjen v. Heberlein*, 54 Mont. 486, 171 P. 928 (1918). If applicable, the saving provision tolls the statute of limitations, the principal aims of which are to prevent potential plaintiffs from neglecting suits, and to suppress stale and fraudulent claims after the facts concerning them have become obscured by a lapse of time and memory. *Cassidy v. Finley*, 173 Mont. 475, 568 P.2d 142 (1977); *Noll v. City of Bozeman*, 166 Mont. 504, 534 P.2d 880 (1975). In most instances, moreover, courts approach the question of tolling statutes of limitations in a liberal manner. *See, e.g.*, *Burnett v. New York Cent. R.R.*, 380 U.S. 424, 85

9

S.Ct. 1050 (1965); *Gaines v. City of New York*, 215 N.Y. 533, 109 N.E. 594 (1915) (Brandeis, J.). *See also Clark v. Oregon Short Line R.R.*, 38 Mont. 177, 99 P. 298 (1909).

The policy behind the doctrine of equitable tolling is likewise to "avoid[ ] forfeitures and allow[ ] good faith litigants their day in court." *Addison v. State*, 578 P.2d 941, 945 (Cal. 1978); *see also Collier v. City of Pasadena*, 191 Cal. Rptr. 681, 686-87 (Cal. App. 2d Dist. 1983) (noting additional policy considerations supporting the doctrine).[4]

¶17    In one of our earliest interpretations of the language of § 27-2-407, MCA, we held that a party's "*bona fide* attempt" to commence an action was sufficient to invoke the statute, even though her original complaint contained insufficient allegations to state a good cause of action. *Clark v. Or. Short Line R.R. Co.*, 38 Mont. 177, 180, 184-86, 99 P. 298, 300, 301-02 (1909). We observed that "an action is commenced by filing what purports to be a complaint, whether it states facts sufficient to constitute a cause of action or not." *Clark*, 38 Mont. at 186, 99 P. at 302. We further held that if the complaint is dismissed based on "the merits of the pleading," as distinguished from "the merits of the controversy," then it is not a "judgment on the merits" and the plaintiff may file another action "asserting the same facts, accompanied by additional allegations which complete the statement of a good cause of action." *Clark*, 38 Mont. at 184-85, 99 P. at 301 (internal quotation marks omitted). Relying on *Clark*, Brilz articulates a credible argument that § 27-2-407, MCA, applies to her common law claim. Alternatively, she argues that she satisfies the criteria for equitable tolling set forth at ¶ 14 of *Lozeau*.

_____

[4] Our equitable tolling jurisprudence can be traced to *Erickson v. Croft*, 233 Mont. 146, 150-51, 760 P.2d 706, 708-09 (1988), which in turn cites *Addison*, 578 P.2d at 943, and *Collier*, 191 Cal. Rptr. at 684-85.

10

¶18 As noted, however, there is a countervailing policy in the law, namely, efficiency and finality. The doctrines of claim preclusion and issue preclusion (sometimes referred to as res judicata and collateral estoppel, respectively[5]) "embody a judicial policy that favors a definite end to litigation, whereby we seek to prevent parties from incessantly waging piecemeal, collateral attacks against judgments." *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267 (citations omitted); *cf. State v. Gilder*, 2001 MT 121, ¶ 10, 305 Mont. 362, 28 P.3d 488 (although the doctrines of law of the case and res judicata are not identical, they often work hand in glove; two important policies underlie and are common to both: judicial economy and finality of judgments). Under claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action. Under issue preclusion, on the other hand, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 n. 6, 102 S. Ct. 1883, 1889 n. 6 (1982); *accord Baltrusch*, ¶ 15 (claim preclusion bars the relitigation of a claim that the party has already had an opportunity to litigate; issue preclusion bars the reopening of an issue that has been litigated and determined in a prior suit). These doctrines serve to conserve judicial resources, relieve parties of the expense and vexation of multiple lawsuits, and foster reliance on adjudication by preventing inconsistent decisions. *Baltrusch*, ¶ 15; *Kremer*, 456 U.S. at 466 n. 6, 102 S. Ct. at 1889 n. 6; *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171 (2008).

---

[5] *McDaniel v. State*, 2009 MT 159, ¶ 27 n. 2, 350 Mont. 422, 208 P.3d 817.

¶19 Metropolitan argues both doctrines in this case. At the outset, we do not agree that issue preclusion is applicable here, as Brilz is not attempting to reopen an issue that was litigated and determined in the prior suit between her and Metropolitan. In order for issue preclusion to apply, the issue decided in the prior adjudication must be "identical" to the issue raised in the subsequent action. *McDaniel*, ¶ 28. Metropolitan's theory, with which the District Court agreed, is that Brilz is attempting to relitigate the question whether she pleaded a common law bad-faith claim in her 2002 complaint. What Metropolitan fails to recognize, however, is that the federal courts decided this question under Rule 8(a)(2) of the Federal Rules of Civil Procedure; and, as Brilz points out, she does not challenge the federal courts' conclusion that she failed to state a common law claim under *federal* pleading standards. Rather, her argument is that her allegations were sufficient to state a common law claim under *Montana* pleading standards. In this regard, the Supreme Court revised the federal standard for reviewing a motion to dismiss in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), five months prior to the Ninth Circuit's decision in Brilz's case. The Supreme Court further elaborated on the standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). For the most part, state high courts have declined to adopt the new "plausibility" standard announced in *Twombly* and *Iqbal*. *See Hawkeye Foodservice Distrib. v. Iowa Educators Corp.*, 812 N.W.2d 600, 608 (Iowa 2012) (citing cases). And, as the *Twombly* dissent noted, the new federal approach appears to be in tension with extant law in Montana and other states. 550 U.S. at 578 n. 5, 127 S. Ct. at 1978 n. 5 (Stevens & Ginsburg, JJ., dissenting) (citing, among others, *Jones v. Mont. Univ. Sys.*, 2007 MT 82, 337 Mont. 1, 7, 155 P.3d 1247, 1252); *see also*

12

*e.g. McKinnon v. W. Sugar Coop. Corp.*, 2010 MT 24, ¶¶ 12, 17, 20, 355 Mont. 120, 225 P.3d 1221; *Morse v. Espeland*, 215 Mont. 148, 151, 696 P.2d 428, 430 (1985). A determination that Brilz's complaint failed to state a common law claim under the federal standard, therefore, is distinct from the issue whether her complaint stated a common law claim under Montana's standard.

¶20 We do agree with Metropolitan's argument for the application of claim preclusion, however. Before discussing that doctrine, we first note that federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity. *Semtek Intl. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508, 121 S. Ct. 1021, 1028 (2001). The federal common law rule, in turn, is to apply the claim-preclusion law of the state in which the federal diversity court sits. *Semtek*, 531 U.S. at 508, 121 S. Ct. at 1028. In other words, "the same claim-preclusive rule (the state rule) appl[ies] whether the dismissal has been ordered by a state or a federal court." *Semtek*, 531 U.S. at 508, 121 S. Ct. at 1028. Any other rule, the Supreme Court noted, "would produce the sort of 'forum-shopping . . . and . . . inequitable administration of the laws' that *Erie* seeks to avoid." *Semtek*, 531 U.S. at 508-09, 121 S. Ct. at 1028 (ellipses in original).

¶21 Again, claim preclusion bars the relitigation of a claim that the party has already had an opportunity to litigate. *Baltrusch*, ¶ 15. This includes claims that were or *could have been* litigated in the first action. *Wiser v. Mont. Bd. of Dentistry*, 2011 MT 56, ¶ 17, 360 Mont. 1, 251 P.3d 675; *Somont Oil Co. v. A & G Drilling, Inc.*, 2008 MT 447, ¶ 11, 348 Mont. 12, 199 P.3d 241. Hence, as a result of the doctrine's application, a party may be precluded from litigating a matter that has never been litigated and that may involve

13

valid rights to relief. The rationale here is to force parties to raise such matters in their first suit in the interest of judicial economy and avoiding the expense and vexation of multiple lawsuits. But, given the countervailing policy favoring the resolution of disputes on their merits, claim-preclusion rules must strike the proper balance between efficiency and finality on one hand and the vindication of just claims on the other. *See Restatement (Second) of Judgments* § 24 cmt. b (1982); Charles Alan Wright et al., *Federal Practice and Procedure* vol. 18, § 4406, 138, § 4407, 157, § 4415, 351 (2d ed., West 2002).[6]

¶22 Claim preclusion encompasses the concepts of merger and bar: all parts of a single claim *merge* in a judgment for the plaintiff or are *barred* by a judgment for the defendant. *Restatement (Second) of Judgments* §§ 18, 19; Wright et al., *Federal Practice and Procedure* at § 4406, 138-39; *see also Hughes v. Salo*, 203 Mont. 52, 61-62, 659 P.2d 270, 274-75 (1983). The elements of claim preclusion are: (1) the parties or their privies are the same in the first and second actions; (2) the subject matter of the actions is the same; (3) the issues are the same in both actions, or are ones that could have been raised in the first action, and they relate to the same subject matter; (4) the capacities of the parties are the same in reference to the subject matter and the issues between them; and (5) a valid final judgment has been entered on the merits in the first action by a court of competent jurisdiction. *Baltrusch*, ¶ 16; *Mt. W. Bank, N.A. v. Glacier Kitchens, Inc.*, 2012 MT 132, ¶ 14, 365 Mont. 276, ___ P.3d ___; *Touris v. Flathead County*, 2011 MT

---

[6] The citations to federal authorities in this discussion are only for their persuasive value in analyzing the question presented. *See e.g. Baltrusch*, ¶¶ 15, 18, 20 (citing federal jurisprudence as persuasive authority). As noted, the claim-preclusive effect of the federal district court's dismissal of Brilz's complaint is determined by Montana law. *Semtek*, 531 U.S. at 508, 121 S. Ct. at 1028.

165, ¶¶ 13, 18, 361 Mont. 172, 258 P.3d 1; *Thornton v. Alpine Home Ctr.*, 2001 MT 310, ¶ 14, 307 Mont. 529, 38 P.3d 855. Here, it is clear the parties are the same, the subject matter is the same (that being the manner in which Metropolitan adjusted Brilz's claim for insurance benefits), and the parties' capacities are the same in reference to the subject matter and the issues between them. The other two elements—whether the issues are the same, and whether a final judgment was entered on the merits in the first action—require a more detailed discussion. We address these two elements in turn.

¶23 "Claim preclusion traditionally aimed to prevent plaintiffs from 'splitting' causes of action, but now also operates as a kind of common-law compulsory joinder requirement, promoting judicial economy through the consolidation of related claims." *Negron-Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 8 (1st Cir. 2008). Whether claims are "related" can be the thorniest facet of the analysis, as the doctrine does not preclude everything that might have been disputed between the parties, but only matters within a certain sphere. *See* Wright et al., *Federal Practice and Procedure* at § 4406, 140-41. In this regard, we have indicated that claim preclusion applies where the second suit arises from the same underlying basis or subject matter as the first suit. *Olsen v. Milner*, 2012 MT 88, ¶ 23, 364 Mont. 523, 276 P.3d 934; *Touris*, ¶ 17; *Wiser*, ¶¶ 12-13. Section 24 of the Restatement (Second) of Judgments provides a useful elaboration of this approach. That section addresses the dimensions of a "claim" for purposes of merger or bar and sets forth the general rule concerning "splitting," as follows:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the

15

defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Restatement (Second) of Judgments* § 24.[7]

¶24    The concept of "transaction" here "connotes a natural grouping or common nucleus of operative facts." *Restatement (Second) of Judgments* § 24 cmt. b. Thus, where one act causes a number of harms to, or invades a number of different interests of, the same person, there is still only one transaction. *Restatement (Second) of Judgments* § 24 cmt. c. The rationale and premise underlying this approach is that modern procedural systems afford parties ample means for fully developing the entire transaction in one action—e.g., by permitting the presentation of all material relevant to the transaction without artificial confinement to any single substantive theory or kind of relief and without regard to historical forms of action or distinctions between law and equity; by allowing allegations to be made in general form and reading them indulgently;

---

[7] The Restatement formulation is the predominant federal rule. *See* Wright et al., *Federal Practice and Procedure* at § 4407, 169. Various states also have adopted or applied the Restatement's test. *See e.g. Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 609 (Colo. 2005); *Andrus v. Nicholson*, 186 P.3d 630, 633 (Idaho 2008); *Computer One, Inc. v. Grisham & Lawless P.A.*, 188 P.3d 1175, 1183 (N.M. 2008); *Whitaker v. Bank of Newport*, 836 P.2d 695, 698-99 (Or. 1992); *Mack v. Utah State Dept. of Com.*, 221 P.3d 194, 203 (Utah 2009); *Sound Built Homes, Inc. v. Windermere Real Estate/South, Inc.*, 72 P.3d 788, 794-96 (Wash. App. Div. 2 2003); *Foianini v. Brinton*, 855 P.2d 1238, 1240-41 (Wyo. 1993). And this Court has previously indicated that "there is merit to the transaction test" set forth in the Restatement. *Lane v. Fourth Jud. Dist. Ct.*, 2003 MT 130, ¶ 28, 316 Mont. 55, 68 P.3d 819.

by allowing allegations to be mutually inconsistent subject to the pleader's duty to be truthful; by permitting considerable freedom of amendment and tolerating changes of direction in the course of litigation; and by enabling parties to resort to compulsory processes besides private investigations to ascertain the facts surrounding the transaction. *Restatement (Second) of Judgments* § 24 cmt. a. "The law of res judicata now reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so."[8] *Restatement (Second) of Judgments* § 24 cmt. a.

¶25 Here, we conclude that Brilz's statutory and common law bad-faith claims arose from the same transaction. There is a common nucleus of operative facts underlying the two claims, that being the manner in which Metropolitan adjusted her claim for insurance benefits. They form a convenient trial unit, and their treatment as a unit conforms to the parties' expectations. Indeed, Brilz's position is that she in fact pleaded both a statutory claim and a common law claim in her 2002 complaint, at least insofar as Montana's pleading standards are concerned.

¶26 Turning, then, to the question whether a final judgment was entered on the merits in the first suit, the federal district court disposed of Brilz's 2002 action on cross-motions for summary judgment, and we have held that summary judgment is a final judgment on the merits for purposes of claim preclusion. *Wiser*, ¶ 10 (citing *Mills v. Lincoln County*,

---

[8] Given this premise, claim preclusion would not apply to situations where the jurisdiction of the court in the first suit was limited to deciding specific matters. For example, a district court sitting in probate has only the special and limited powers conferred by statute, and has no power to hear and determine any matters other than those which come within the purview of the statute or which are implied as necessary to a complete exercise of those expressly conferred. *Haugen v. Haugen*, 2008 MT 304, ¶ 9, 346 Mont. 1, 192 P.3d 1132.

262 Mont. 283, 285, 864 P.2d 1265, 1267 (1993)). Brilz points out, however, that the portion of the federal district court's order directed to her common law claim involved an analysis of whether she had even pleaded such a claim. Brilz argues that the federal district court's judgment was not "on the merits" with respect to her common law claim because the court ultimately ruled that she had failed to allege such a claim in her complaint. Brilz cites *Lane v. Farmers Union Ins.*, 1999 MT 252, ¶ 41, 296 Mont. 267, 989 P.2d 309, for the proposition that there can be no "judgment on the merits" of a claim if the claim is not "effectively raised in the pleadings." This portion of *Lane*, however, concerned the application of issue preclusion and, thus, is not directly on point.

¶27 As noted earlier, claim preclusion encompasses the concepts of merger and bar. Under the latter, "[a] valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." *Restatement (Second) of Judgments* § 19. It is frequently said—as our caselaw illustrates—that this rule applies only if the judgment is rendered "on the merits." The prototypical case is one in which the merits of the claim are in fact adjudicated against the plaintiff after trial of the substantive issues. As the Restatement notes, however, judgments not passing directly on the substance of the claim have increasingly come to operate as a bar (and, for this reason, the Restatement eschews the "on the merits" terminology due to its possibly misleading connotations). *Restatement (Second) of Judgments* § 19 cmt. a. This includes a judgment for the defendant on the insufficiency of the complaint; in other words, the plaintiff whose complaint is dismissed for failure to state a claim is barred from bringing a second action premised on the same claim. *Restatement (Second) of Judgments* § 19

18

cmt. d; *see also e.g. Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (under federal law, dismissal for failure to plead a cognizable claim is a "judgment on the merits" to which claim preclusion applies).

> Such a result is warranted by the ease with which pleadings may be amended, normally at least once as a matter of course, and by the unfairness of requiring the defendant to submit to a second action (often initiated long after the first has come to an end) when no such amendment is sought, or when no appeal has been taken from an erroneous denial of leave to amend.

*Restatement (Second) of Judgments* § 19 cmt. d. Hence, "[t]he modern view . . . is that a party should be held to account not only for what he actually pleaded, but for what he could have pleaded in the earlier suit." *Pisnoy v. Ahmed*, 499 F.3d 47, 61 (1st Cir. 2007). Again, this is due in part to the impact of modern pleading rules:

> Pleading has moved so far from older rules that in many courts great effort would be required to plead a valid claim so ineptly as to suffer dismissal. Even if a complaint is found wanting, leave to amend is available with great freedom. This permissive pleading practice couples with such burdens as are imposed on the defendant to warrant control of the plaintiff's claim by the first court. Having brought suit, the plaintiff should be prepared to plead a valid claim, to persuade the court that amendment should be granted, to demonstrate valid reasons for dismissal without prejudice to a second action, or be barred. Very few meritorious claims indeed should be precluded by this rule.

Wright et al., *Federal Practice and Procedure* at vol. 18A, § 4439, 194-97 (footnotes omitted).

¶28    It is precisely for these reasons we conclude that principles of claim preclusion must prevail over Brilz's argument based on *Clark v. Or. Short Line R.R. Co.*, 38 Mont. 177, 99 P. 298 (1909), and § 27-2-407, MCA. *Clark* was decided long before the 1961 adoption of the Montana Rules of Civil Procedure. As we have explained, the liberal

19

pleading philosophy of the Rules of Civil Procedure superseded the highly technical theory of code pleading which often resulted in substantial injustice to the injured party. *McJunkin v. Kaufman & Broad Home Sys., Inc.*, 229 Mont. 432, 436-37, 748 P.2d 910, 913 (1987). During that period, " 'the slip of an [attorney's] quill pen could spell death for a plaintiff's cause of action.' " *McJunkin*, 229 Mont. at 437, 748 P.2d at 913 (brackets in original) (quoting *Thompson v. Allstate Ins. Co.*, 476 F.2d 746, 749 (5th Cir. 1973)). Those days are over in Montana. Given the liberality of our rules regarding pleadings and amendments to pleadings (not to mention the demise of the quill in favor of the word processor), *see McKinnon v. W. Sugar Coop. Corp.*, 2010 MT 24, ¶¶ 12, 17, 20, 355 Mont. 120, 225 P.3d 1221; *Kunst v. Pass*, 1998 MT 71, ¶¶ 34-36, 288 Mont. 264, 957 P.2d 1; *Hobble-Diamond Cattle Co. v. Triangle Irrigation Co.*, 249 Mont. 322, 325-26, 815 P.2d 1153, 1155-56 (1991), we hold that a dismissal for inadequate pleading is a "final judgment on the merits" for purposes of claim preclusion under Montana law, so long as leave to amend was available and either was not requested or was requested but properly rejected under the circumstances.[9]

¶29 Here, at the time of the federal district court's decision in Brilz's case, the law in the Ninth Circuit was as follows. Absent prejudice to the opposing party, or a strong showing of undue delay, bad faith or dilatory motive on the part of the movant, repeated

---

[9] *See Lindey's, Inc. v. Prof. Consultants, Inc.*, 244 Mont. 238, 242, 797 P.2d 920, 923 (1990) (while the rule favors allowing amendments, a trial court is justified in denying a motion to amend for an apparent reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, or futility of the amendment).

failure to cure deficiencies by amendments previously allowed, or futility of amendment, there existed "a *presumption . . .* in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) (emphasis in original). Dismissal with prejudice and without leave to amend was not appropriate unless it was clear that the complaint could not be saved by amendment. *Eminence Capital*, 316 F.3d at 1052. In *Eminence Capital*, the Ninth Circuit concluded that the district court had abused its discretion in denying leave to amend where "plaintiffs' allegations were not frivolous, plaintiffs were endeavoring in good faith to meet the heightened pleading requirements and to comply with court guidance, and, most importantly, it appears that plaintiffs had a reasonable chance of successfully stating a claim if given another opportunity." 316 F.3d at 1053. In light of this policy toward amendments, which is the same liberal policy this Court has adopted with respect to amendments under Montana law, *see Hobble-Diamond Cattle*, 249 Mont. at 325-26, 815 P.2d at 1155-56; *Walstad v. Norwest Bank of Great Falls*, 240 Mont. 322, 324, 783 P.2d 1325, 1326 (1989), it is clear that Brilz could have sought to amend her complaint in the federal proceeding in an attempt to save her common law claim. She admittedly did not do so. Accordingly, we conclude that the federal district court's judgment was a final judgment on the merits, and all five elements of claim preclusion are thus satisfied in this case.

¶30    Brilz argues extensively that the allegations in her 2002 complaint were sufficient to state a common law bad-faith claim against Metropolitan under Montana law. That may be true, but it is beside the point. Metropolitan had a statutory right to remove the

action to federal court. *See* 28 U.S.C. §§ 1332(a)(1), 1441(a), (b). Once there, it became incumbent on Brilz to comply with federal pleading requirements. Her choice not to seek amendment of her complaint while she had the opportunity to do so leads us to conclude that claim preclusion applies here and defeats her arguments under the saving statute and under the doctrine of equitable tolling. Although the District Court denied Brilz's request for a declaratory judgment under somewhat different reasoning, we will affirm a district court decision if the right result was reached, though for the wrong reason, and we do so here. *Hinebauch v. McRae*, 2011 MT 270, ¶ 25, 362 Mont. 358, 264 P.3d 1098.

¶31 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS