FILED

April 12 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0464

DA 15-0464

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 90

ASARCO LLC, a Delaware corporation,

      Plaintiff and Appellant,

   v.

ATLANTIC RICHFIELD COMPANY, a
Delaware Corporation,

      Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 2015-07
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Rachel H. Parkin, Dylan McFarland, Milodragovich, Dale & Steinbrenner, P.C., Missoula, Montana

            Gregory Evans, Laura G. Brys, McGuirewoods LLP, Los Angeles, California

      For Appellee:

            Randy J. Cox, Randy J. Tanner, Boone Karlberg P.C., Missoula, Montana

            Shannon Wells Stevenson, Davis Graham & Stubbs LLP, Denver, Colorado

Submitted on Briefs:  March 9, 2016
Decided:  April 12, 2016

Filed:

_____

Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Asarco LLC appeals the order of the First Judicial District Court, Lewis and Clark County, granting Atlantic Richfield Company's motion for judgment on the pleadings and dismissing Asarco's claims. We restate the issue on appeal as follows:

> *Whether the District Court correctly determined that claim preclusion bars Asarco's claims.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 For over one hundred years, Asarco and its predecessors operated a lead smelting facility in East Helena, Montana (the Site). From 1927 to 1972, Atlantic Richfield's predecessor operated a zinc fuming plant on land leased from Asarco at the Site.[1] In 1972, Atlantic Richfield sold the zinc fuming plant and related property to Asarco. Under the 1972 sale agreement (1972 Agreement), Atlantic Richfield agreed to indemnify Asarco for liabilities arising out of Atlantic Richfield's operations at the Site. Additionally, the 1972 Agreement's terms contained a disclosure clause in which Atlantic Richfield agreed to deliver all relevant documents and records to Asarco and a representation clause in which Atlantic Richfield represented and warranted that it had delivered all the information required by the disclosure clause.

¶4 In 1984, due to extensive contamination of the soil, surface water, and groundwater at the Site and the surrounding area, the Environmental Protection Agency (EPA) added the Site and surrounding area to the National Priorities List under the

---

[1] Atlantic Richfield refers to itself and its predecessor, the Anaconda Company, as "Atlantic Richfield" and we will do the same.

Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), commonly known as "Superfund." The EPA requested information from Asarco and Atlantic Richfield regarding their operations at the Site because it had identified both as potentially responsible for the contamination. The EPA ultimately determined that Asarco was obligated to fund and conduct cleanup efforts at the Site based on the information provided by the parties.

¶5 In the 1990s the EPA and Asarco entered into several consent decrees regarding Asarco's responsibility to remediate contamination at the Site. In 2005, Asarco filed for Chapter 11 bankruptcy protection. During its bankruptcy proceeding, Asarco entered into two settlements with the State and federal governments regarding its environmental liabilities at the Site. To date, Asarco has paid approximately $138 million for remediation at the Site.

¶6 In June 2012 Asarco filed a complaint against Atlantic Richfield in the United States District Court for the District of Montana. Asarco sought contribution—pursuant to CERCLA—from Atlantic Richfield for costs incurred in cleaning up the Site. Asarco claimed that Atlantic Richfield was responsible, in part, for the Site's contamination due to the zinc fuming plant's operation. Asarco therefore asserted that Atlantic Richfield was liable under CERCLA for its equitable share of costs related to the Site's cleanup.

¶7 In June 2014, following extensive discovery between the parties, Atlantic Richfield moved for summary judgment on the ground that Asarco's claims were untimely under CERCLA's statute of limitations. The federal district court agreed that the claims were time-barred and granted Atlantic Richfield's motion for summary

judgment in August 2014. *Asarco LLC v. Atl. Richfield Co.*, 73 F. Supp. 3d 1285, 1296 (D. Mont. 2014) (hereafter *Asarco I*). *Asarco I* is currently on appeal to the U.S. Ninth Circuit Court of Appeals.

¶8 Following the federal court's grant of summary judgment in *Asarco I*, Asarco commenced the present action against Atlantic Richfield in the First Judicial District Court. Asarco's complaint alleged the following claims under state law: breach of contract, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, and constructive fraud. Asarco claimed that it learned the basis for its state-law claims during discovery in *Asarco I*. Asarco claimed further that it was entitled to indemnification from Atlantic Richfield for Atlantic Richfield's "share of the claims, liabilities, damages, losses, costs and expenses attributable to the Claims, including attorneys' fees and costs, that arose out of or resulted from [Atlantic Richfield's] construction, ownership and operation" of the zinc fuming plant at the Site. Asarco premised its state-law claims on Atlantic Richfield's alleged breach of the 1972 Agreement.

¶9 In March 2015 Atlantic Richfield moved for judgment on the pleadings pursuant to M. R. Civ. P. 12(c) (Rule 12(c)) on the ground that the doctrine of claim preclusion barred Asarco's claims. The District Court issued its order in June 2015 following briefing and oral argument. The District Court determined: that Asarco could have amended its complaint in *Asarco I* to include its state-law claims; that the federal district court would have had supplemental jurisdiction over the state-law claims; that it was not clear whether the federal district court would have refused to continue exercising

4

supplemental jurisdiction over the state-law claims after dismissing Asarco's CERCLA claim; and that the elements of claim preclusion were met. Accordingly, the court granted Atlantic Richfield's motion and dismissed the matter. Asarco appeals.

**STANDARD OF REVIEW**

¶10 A district court's decision on a Rule 12(c) motion for judgment on the pleadings is a conclusion of law that we review de novo for correctness. *Firelight Meadows, LLC v. 3 Rivers Telephone Coop., Inc.*, 2008 MT 202, ¶ 12, 344 Mont. 117, 186 P.3d 869. A Rule 12(c) motion is appropriate when the moving party establishes that no material issues of fact exist and that it is entitled to judgment as a matter of law. *Firelight Meadows, LLC*, ¶ 9. In evaluating a Rule 12(c) motion, a court must assume that all of the well-pleaded factual allegations in the nonmovant's pleadings are true and that all contravening assertions in the movant's pleadings are false. *Firelight Meadows, LLC*, ¶ 11. Because "[a]ll exhibits and materials referred to in a pleading are incorporated into the pleading," a court may consider any such exhibits and materials in deciding a Rule 12(c) motion. *Firelights Meadows, LLC*, ¶ 15. Furthermore, only "well-pleaded factual allegations" are assumed to be true for purposes of deciding a Rule 12(c) motion; questions of law are "legal determination[s] for a court to decide based upon well-established legal precedent." *Firelights Meadows, LLC*, ¶ 18. A district court's application of claim preclusion presents an issue of law that we review de novo for correctness. *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 13, 366 Mont. 78, 285 P.3d 494.

**DISCUSSION**

¶11    *Whether the District Court correctly determined that claim preclusion barred Asarco's claims.*

¶12    In its order, the District Court first observed that Asarco's state-law claims were not raised in *Asarco I.* The court noted that the doctrine of claim preclusion applies equally to claims that could have been raised in the first action. The District Court therefore analyzed several issues pertinent to its conclusion that Asarco's state-law claims could have been raised in *Asarco I* and therefore were barred by claim preclusion.

¶13    The District Court first found that Asarco discovered the grounds underlying its state-law claims during discovery in *Asarco I*; therefore, the court concluded that Asarco could have amended its *Asarco I* complaint to include those claims pursuant to Fed. R. Civ. P. 15(a), which governs amendments to pleadings. The court concluded further that the federal district court would have exercised supplemental jurisdiction over Asarco's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims were part of the same case or controversy as its CERCLA claim. The court next noted that under 28 U.S.C. § 1367(c), a federal court may continue to exercise supplemental jurisdiction over a claim if the court has dismissed the federal claims. Relying on the Restatement (Second) of Judgments § 25 and decisions from the Ninth Circuit, the court determined that it was unclear whether the federal district court would have declined to exercise continuing jurisdiction over the state-law claims after dismissing Asarco's CERCLA claim on summary judgment. Finally, the court determined that the subject matter and the issues were the same in both actions because "[b]oth actions concern [Atlantic

6

Richfield's] operation of the East Helena zinc fuming plant, its alleged pollution of the ground and water in that area, and its attempted concealment of those operations." The District Court concluded that claim preclusion barred Asarco's state-law claims, granted Atlantic Richfield's motion for judgment on the pleadings, and dismissed the case.

¶14 Asarco contends that the District Court erred in several respects. First, Asarco asserts that the court incorrectly presumed that the federal district court would have continued to exercise supplemental jurisdiction over its state-law claims following the federal court's dismissal of the CERCLA claim on summary judgment. Next, Asarco contends that it did not have knowledge of its fraud claims in sufficient time to raise them in federal court prior to the court's summary judgment ruling in *Asarco I*. Finally, Asarco argues that the subject matter and issues in both cases are different. Therefore, it asserts that claim preclusion is inappropriate.

¶15 Claim preclusion bars a party from "relitigating claims that were or could have been raised" in a previous action in which a final judgment was reached. *Brilz*, ¶ 18. The doctrine embodies "a judicial policy that favors a definite end to litigation." *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267 (citations omitted). Claim preclusion deters "plaintiffs from splitting a single cause of action into more than one lawsuit, thereby conserving judicial resources and encouraging reliance on adjudication by preventing inconsistent judgments." *Baltrusch*, ¶ 15 (citations omitted). Claim preclusion applies if the following elements are met:

> (1) the parties or their privies are the same in the first and second actions;
> (2) the subject matter of the actions is the same; (3) the issues are the same
> in both actions, or are ones that could have been raised in the first action,

7

and they relate to the same subject matter; (4) the capacities of the parties are the same in reference to the subject matter and the issues between them; and (5) a valid final judgment has been entered on the merits in the first action by a court of competent jurisdiction.

*Brilz*, ¶ 22. Here, it is undisputed that the parties are the same, that the capacities of the parties are the same, and that the federal district court entered a final judgment on the merits in *Asarco I*. Thus, the elements in dispute are whether the actions involve the same subject matter and, if so, whether the issues in the instant case are ones that could have been raised in the first action.

¶16 Asarco argues that the subject matter of the cases is different because "the federal case is about contamination, while the very different state case is about concealment." The federal case, Asarco asserts, related to "whether [Atlantic Richfield] released contaminates at the [Site], what type of contaminates it released, how much of these contaminates it released, and accordingly how much it should contribute to the clean up costs." On the other hand, Asarco contends, the instant case relates to "what documents and information were withheld by [Atlantic Richfield], what affirmative misrepresentations and misstatements were made by [Atlantic Richfield], and whether such withholdings and misstatements violated the terms of the 1972 Agreement." In other words, Asarco claims that the federal case concerned Atlantic Richfield's conduct prior to the sale of its zinc fuming plant and the instant case concerns Atlantic Richfield's conduct after selling its zinc fuming plant. Asarco contends further that the "level of technicality," the witnesses necessary to each case, and when the claims accrued

8

underscores the differences between both cases. Finally, Asarco alleges that the "state law claims are based on facts independent of the previous federal court action."

¶17 The subject matter element of claim preclusion "is concerned with whether the two actions arise from the same underlying basis." *Touris v. Flathead Cnty.*, 2011 MT 165, ¶ 17, 361 Mont. 172, 258 P.3d 1 (citing *Wiser v. Mont. Bd. of Dentistry*, 2011 MT 56, ¶¶ 12-13, 360 Mont. 1, 251 P.3d 675; *State ex rel. Harlem Irrigation Dist. v. Mont. Seventeenth Judicial Dist. Ct.*, 271 Mont. 129, 133-34, 894 P.2d 943, 945 (1995)); *Olsen v. Milner*, 2012 MT 88, ¶ 23, 364 Mont. 523, 276 P.3d 934. The parties' pleadings make clear that concealment of contamination from Atlantic Richfield's zinc fuming plant is at the heart of both cases.

¶18 In its briefing on appeal, Asarco asserts that *Asarco I*'s subject matter concerned "the contamination that resulted from [Atlantic Richfield's] ownership and operation of its zinc fuming plant at the East Helena site." In its first amended complaint in *Asarco I*, referenced in Asarco's complaint in the instant case, Asarco asserted:

> [Atlantic Richfield] (including through its corporate predecessors) owned and operated a zinc fuming facility adjacent to the East Helena site. . . . These operations lead to disposals or discharges of lead, arsenic, copper, zinc, cadmium and other hazardous substances into the soil, surface water and groundwater of the Helena Valley. Asarco's East Helena Settlements have paid to remediate these metals.

Because Atlantic Richfield was responsible for the release of hazardous substances from its zinc fuming plant, Asarco asserted that it was entitled to contribution from Atlantic Richfield for the claims Asarco paid to remediate the contamination at the Site arising out of the zinc fuming plant's operation by Atlantic Richfield. In its response in opposition

9

to Atlantic Richfield's motion for summary judgment in *Asarco I*—again referenced in Asarco's complaint in the instant case—Asarco alleged:

> [Atlantic Richfield] responded to information requests and demands for payment from EPA stating that it never released any hazardous substances at the site. Contrary to those sworn statements, [Atlantic Richfield's] records reveal 45 years of massive, unreported releases of arsenic. . . . [Atlantic Richfield] employees now admit that [Atlantic Richfield] wrongly kept this record of pollution from the EPA.

Asarco alleged further that the EPA looked solely to Asarco to remediate the Site's contamination because the EPA was "[u]naware of [Atlantic Richfield's] misconduct."

¶19 In its pre-trial proposed conclusions of law in *Asarco I*, attached to Atlantic Richfield's answer in the instant case, Asarco asserted that "[i]n formulating an allocation for contribution, the court may consider factors other than the actual amounts contributed to the Site." One factor Asarco cited was "the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to public health or the environment." During a deposition in *Asarco I*, attached to Atlantic Richfield's answer in the instant case, Asarco's counsel brought up this cooperation factor and asked whether certain documents "should have been provided to the United States in response" to the EPA's request for information regarding Atlantic Richfield's historical waste disposal practices at the Site. Asarco's counsel made clear that the purpose of his questions relating to Atlantic Richfield's response to the EPA's information request was "to determine whether [Atlantic Richfield] co-operated [sic]" with the EPA. In other words, Asarco was attempting to demonstrate in *Asarco I* that Atlantic Richfield's failure to cooperate with the EPA by not disclosing certain documents relating to contamination at the Site

10

violated CERCLA and therefore justified reimbursing Asarco for costs related to the Site's clean-up. The pleadings demonstrate that Asarco's CERCLA contribution claim in *Asarco I* arises, in part, from Atlantic Richfield's alleged concealment of contamination from the zinc fuming plant.

¶20 Asarco asserts that the instant case's subject matter nonetheless differs from that of *Asarco I* because this case concerns Atlantic Richfield's "concealment of schematics and design documents it was under an obligation to disclose, and its affirmative misrepresentations to Asarco, and to the EPA." In its state court complaint, Asarco asserts that Atlantic Richfield deceived the EPA by "not disclos[ing] any of its own releases of hazardous substances at the Site in response to [the EPA's] requests [for information regarding Atlantic Richfield's historical waste disposal practices]. [Atlantic Richfield] represented that it operated a closed circuit, noncontact cooling system [at the zinc fuming plant]." Asarco asserts further that Atlantic Richfield's modification of the cooling system contributed to the Site's contamination. Asarco's breach of contract claim alleges that Atlantic Richfield "failed to supply Asarco with copies of all authorizations, permits, plans, drawings, design, records, and licenses, which showed its release and discharge of hazardous substances into the environment during [Atlantic Richfield's] ownership and operation of the" zinc fuming plant. Its breach of the covenant of good faith and fair dealing claim alleges that Atlantic Richfield "wrongfully withheld the Contamination Documents and actively concealed its contamination of the environment during its ownership and operation of the [zinc fuming plant] as a pretext to avoid its contractual obligations." Asarco's factual allegations demonstrate that its

11

claims of "concealment" and "affirmative misrepresentations" arise from the Site's contamination during Atlantic Richfield's ownership and operation of the zinc fuming plant. Moreover, Asarco's indemnification claim alleges that Atlantic Richfield is obligated to indemnify Asarco for Atlantic Richfield's "share of the claims, liabilities, damages, losses, costs and expenses attributable to the Claims . . . that arose out of or resulted from [Atlantic Richfield's] construction, ownership and operation of the" zinc fuming plant. Asarco therefore is seeking the same relief it sought in *Asarco I*—that Atlantic Richfield was "liable for [its] equitable share[ ] of any overpayment incurred by Asarco" in remediating contamination at the Site.

¶21 Based on our review of the pleadings and their incorporated exhibits and materials, we conclude that the subject matter is the same in both cases because both cases "arise from the same underlying basis"—Atlantic Richfield's responsibility for contamination at the Site that allegedly resulted from its ownership and operation of the zinc fuming plant. *Touris*, ¶ 17; *Olsen*, ¶ 23.

¶22 Asarco's contentions ring somewhat hollow when considering its representation during oral argument on the motion for judgment on the pleadings. Asarco stated that if the Ninth Circuit Court of Appeals were to reverse the federal district court's decision in *Asarco I*, it "would seek removal" of its state-law claims to the federal district court. In other words, Asarco acknowledged that it would seek to have the federal district court exercise supplemental jurisdiction over its state-law claims. 28 U.S.C. § 1367 governs supplemental jurisdiction and provides federal courts with "supplemental jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). In determining whether a federal court has the authority to exercise supplemental jurisdiction over state-law claims, the United States Supreme Court looks to whether the federal claims and the state-law claims "derive from a common nucleus of operative fact." E.g., *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351, 126 S. Ct. 1854, 1866 (2006); *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 165, 118 S. Ct. 523, 529 (1997); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138 (1966). In seeking to remove the instant case to the federal district court, Asarco therefore would have to demonstrate that its claims in both cases "derive from a common nucleus of operative fact." *See DaimlerChrysler Corp.*, 547 U.S. at 351, 126 S. Ct. at 1866.

¶23 In like manner, our claim preclusion precedent counsels that the issues in two actions are the same, or relate to the same subject matter, when "[t]here is a common nucleus of operative facts underlying" the claims in both cases. *Brilz*, ¶ 25. Whether the subject matter is the same in both cases requires similar analysis. *Brilz*, ¶ 23 (analyzing whether the issues in two cases are the same and concluding that "claim preclusion applies where the second suit arises from the same underlying basis or subject matter as the first suit"). As shown above, the pleadings demonstrate that "there is a common nucleus of operative facts underlying" both actions—Atlantic Richfield's alleged acts, and concealment of those acts, that produced contamination at the Site. *Brilz*, ¶ 25. Accordingly, we conclude that the issues in both cases relate to the same subject matter.

¶24 Because the subject matter is the same and the issues in both cases relate to Atlantic Richfield's alleged concealment of its contamination, we consider whether

13

Asarco could have raised in *Asarco I* the claims it advances here. Asarco first asserts that the District Court erred by not applying the "fraud exception" to claim preclusion. Asarco contends that its claims cannot be barred by claim preclusion because Atlantic Richfield "fraudulently concealed the information giving rise to Asarco's state law claims, and thereby prevented Asarco from timely bringing such claims under the federal court's supplemental jurisdiction during the CERCLA litigation." Asarco alleges that it "did not have the information necessary to fully realize the ramifications of [Atlantic Richfield's] fraudulent conduct and the existence of state law claims until May 1, 2014." By that point, Asarco contends, "discovery had closed, expert deadlines had passed and expert disclosures had been made, and the deadline to amend pleadings had long since passed." Consequently, Asarco contends that it did not have sufficient time to raise its state-law claims in *Asarco I*.

¶25 Atlantic Richfield counters that Asarco's suggested rule "would allow a plaintiff with both state and federal claims arising from the same facts to file only its federal claims in a federal court action, wait to see if those claims were successful, and, if not, turn around and file its state claims in a state court action." Atlantic Richfield contends that "Asarco had ample means in the federal court to develop its allegations of fraud and, in fact, did develop the very evidence it now wants to bring in Montana's courts." Accordingly, Atlantic Richfield claims that Asarco could have added its state-law claims under "the federal court's liberal rules of amendment."

¶26 The law of claim preclusion "reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." *Brilz*, ¶ 24

(quoting Restatement (Second) of Judgments § 24 cmt. a). As such, claim preclusion bars a party from litigating claims that "*could have been* litigated in the first action." *Brilz*, ¶ 21 (citing *Wiser*, ¶ 17; *Somont Oil Co. v. A & G Drilling, Inc.*, 2008 MT 447, ¶ 11, 348 Mont. 12, 199 P.3d 241) (emphasis in original). Consequently, claim preclusion may bar a party "from litigating a matter that has never been litigated and that may involve valid rights to relief. The rationale here is to force parties to raise such matters in their first suit in the interest of judicial economy and avoiding the expense and vexation of multiple suits." *Brilz*, ¶ 21.

¶27 Asarco's assertion that the District Court erred by not applying claim preclusion's "fraud exception" is misplaced. We have not recognized a blanket "fraud exception" to claim preclusion. In fact, we recently concluded that a party's fraud claims were barred by claim preclusion because those claims could have been raised in the first action. *Estate of Kinnaman v. Mt. West Bank, N.A.*, 2016 MT 25, 382 Mont. 153, 365 P.3d 486 (concluding that a party was "barred from reopening issues [including fraudulent inducement, constructive fraud, and actual fraud] that were or should have been determined in the prior suit").

¶28 We are unpersuaded by Asarco's further assertions that it did not have sufficient time to raise its state-law claims in *Asarco I*. Asarco alleges that it knew the facts underlying its claims on May 1, 2014; the federal district court entered its summary judgment order in *Asarco I* on August 26, 2014. The District Court found that despite Asarco's "allegations of fraud and concealment, it is fairly clear that Asarco knew generally of [the facts underlying its state-law claims] in March 2013 and at least by

February 2014." Even taking Asarco's factual representation as true, the facts that form the basis of its complaint in the instant action—e.g., the contractual relationship between the parties, the Site's alleged contamination by Atlantic Richfield's zinc fuming plant, Asarco's payments to clean up the Site, and Atlantic Richfield's concealment of facts and misrepresentations to Asarco and the EPA—were known to Asarco more than three months before the federal district court's final judgment on the merits in *Asarco I*. Because the subject matter of both cases arose from the same underlying basis, the federal district court could have exercised supplemental jurisdiction over Asarco's state-law claims in *Asarco I*. *See* 28 U.S.C. § 1367(a) (providing that a federal court may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

¶29 Although, as Asarco asserts, the deadline to amend its pleadings as a matter of course had passed, the Federal Rules of Civil Procedure provide that when a party seeks leave to amend the party's pleading, "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In the Ninth Circuit, "there exists a *presumption* . . . in favor of granting leave to amend," if there is no showing of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, repeated failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original); *Brilz*, ¶ 29 (analyzing Ninth Circuit policy regarding leave to amend under Fed. R. Civ. P. 15(a) and citing *Eminence Capital, LLC*, 316 F.3d at 1052). "In light of this

16

policy towards amendments . . . it is clear that [Asarco] could have sought to amend [its] complaint in the federal proceeding." *Brilz*, ¶ 29. Accordingly, we conclude that Asarco's claims at issue here could have been raised in *Asarco I*.

¶30 Finally, Asarco takes issue with the District Court's conclusion that the federal court would have retained supplemental jurisdiction over the state-law claims following the court's dismissal of the CERCLA claim in *Asarco I*. Asarco asserts that the general rule under federal case law is for federal courts to not exercise continuing supplemental jurisdiction over state-law claims when all federal claims are dismissed in advance of trial. Montana federal district courts, Asarco contends, adhere to this general rule. Moreover, Asarco asserts, the language of the Restatement (Second) of Judgments § 25 "establishes that dismissal of federal claims in advance of trial is one situation in which it is 'clear' that the federal court would decline to exercise supplemental jurisdiction." Asarco therefore alleges that the federal district court would have declined to exercise continuing supplemental jurisdiction over its state-law claims because those claims were not developed, additional discovery would have been required, and the state-law claims had not been litigated in the federal forum by the time summary judgment was granted on the CERCLA claim.

¶31 The Restatement (Second) of Judgments § 25, entitled "Exemplifications of General Rule Concerning Splitting," provides that claim preclusion applies even when a party is prepared "(1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action." Comment e illustrates an exception to this general rule:

17

> A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.

Restatement (Second) of Judgments § 25 cmt. e (1982). Comment e therefore illustrates that claim preclusion would not apply in the instant case if it could be shown that the federal district court would have clearly declined to maintain jurisdiction over Asarco's supplemental state-law claims following its dismissal of the CERCLA claim.

¶32 We decline to speculate whether the federal district court would have continued to exercise supplemental jurisdiction over Asarco's state-law claims—had Asarco raised them—after granting Atlantic Richfield's summary judgment motion in *Asarco I*. Such speculation defeats the policy of judicial economy and "a definite end to litigation" that the claim preclusion doctrine is intended to advance. *Baltrusch*, ¶ 15. The question arises here only because the federal district court was not given the opportunity to decide for itself whether to retain jurisdiction over Asarco's state-law claims. Because Asarco could have brought its state-law claims before the federal district court in *Asarco I*, we conclude that the District Court correctly determined that claim preclusion bars Asarco's action.

## CONCLUSION

¶33  We affirm the District Court's order granting Atlantic Richfield's motion for judgment on the pleadings.

/S/ BETH BAKER

We Concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE